Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
02/19/2019 09:06 AM CST

State of Nebraska, appellee, v.
William E. Howell, Jr., appellant.
___ N.W.2d ___

Filed February 5, 2019.    No. A-17-1186.

1. **Constitutional Law: Search and Seizure: Motions to Suppress: Appeal and Error.** In reviewing a trial court's ruling on a motion to suppress based on a claimed violation of the Fourth Amendment, an appellate court applies a two-part standard of review. Regarding historical facts, an appellate court reviews the trial court's findings for clear error. But whether those facts trigger or violate Fourth Amendment protections is a question of law that an appellate court reviews independently of the trial court's determination.

2. **Warrantless Searches.** The warrantless search exceptions recognized by the Nebraska Supreme Court include: (1) searches undertaken with consent, (2) searches under exigent circumstances, (3) inventory searches, (4) searches of evidence in plain view, and (5) searches incident to a valid arrest.

3. **Constitutional Law: Search and Seizure: Duress.** To be effective under the Fourth Amendment, consent to a search must be a free and unconstrained choice not the product of a will overborne. Consent must be given voluntarily and not as the result of duress or coercion, whether express, implied, physical, or psychological.

4. **Search and Seizure.** The determination of whether a consent to a search is voluntarily given is a question of fact to be determined from the totality of the circumstances.

5. **Motions to Suppress: Appeal and Error.** In determining the correctness of a trial court's ruling on a suppression motion, an appellate court will accept the factual determinations and credibility choices made by the trial court unless, in light of all the circumstances, such findings are clearly erroneous.

6. **Rules of Evidence: Hearsay: Appeal and Error.** Apart from rulings under the residual hearsay exception, an appellate court reviews for clear error the factual findings underpinning a trial court's hearsay

ruling and reviews de novo the court's ultimate determination to admit evidence over a hearsay objection.

7. **Evidence: Appeal and Error.** Error can be based on a ruling that admits evidence only if the specific ground of objection is apparent either from a timely objection or from the context.

8. **Trial: Pretrial Procedure: Evidence: Appeal and Error.** When a motion in limine to exclude evidence is overruled, the movant must object when the particular evidence which was sought to be excluded by the motion is offered during trial to preserve error for appeal.

9. **Hearsay.** If an out-of-court statement is not offered for the purpose of proving the truth of the facts asserted, it is not hearsay.

10. **Trial: Hearsay: Proof.** When overruling a hearsay objection on the ground that testimony about an out-of-court statement is received not for its truth but only to prove that the statement was made, a trial court should identify the specific nonhearsay purpose for which the making of the statement is relevant and probative.

11. **Trial: Evidence: Appeal and Error.** Erroneous admission of evidence is harmless error and does not require reversal if the evidence is cumulative and other relevant evidence, properly admitted, supports the finding by the trier of fact.

12. **Verdicts: Juries: Appeal and Error.** Harmless error review looks to the basis on which the jury actually rested its verdict. The inquiry is not whether in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the actual guilty verdict rendered was surely unattributable to the error.

13. **Motions for Mistrial: Appeal and Error.** Whether to grant a mistrial is within the trial court's discretion, and an appellate court will not disturb its ruling unless the court abused its discretion.

14. **Rules of Evidence.** In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by the Nebraska Evidence Rules; judicial discretion is involved only when the rules make discretion a factor in determining admissibility.

15. **Rules of Evidence: Appeal and Error.** Where the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court, an appellate court reviews the admissibility of evidence for an abuse of discretion.

16. **Trial: Waiver.** A party who fails to insist upon a ruling to a proffered objection waives that objection.

17. **Criminal Law: Witnesses: Testimony: Rules of Evidence.** When a defendant in a criminal case testifies in his own behalf, he is subject to the same rules of cross-examination as any other witness, including Neb. Evid. R. 609, Neb. Rev. Stat. § 27-609 (Reissue 2016).

18. **Criminal Law: Witnesses: Testimony: Juries: Rules of Evidence.** The purpose of Neb. Evid. R. 609, Neb. Rev. Stat. § 27-609 (Reissue 2016), is to allow the prosecution to attack the credibility of a testifying defendant, not to retry him for a separate crime or prejudice the jury by allowing unlimited access to the facts of an unrelated crime.

19. **Rules of Evidence: Other Acts.** Neb. Evid. R. 404(2), Neb. Rev. Stat. § 27-404(2) (Reissue 2016), does not apply to evidence of a defendant's other crimes or bad acts if the evidence is inextricably intertwined with the charged crime.

20. ____: ____. Inextricably intertwined evidence includes evidence that forms part of the factual setting of the crime, or evidence that is so blended or connected to the charged crime that proof of the charged crime will necessarily require proof of the other crimes or bad acts, or if the other crimes or bad acts are necessary for the prosecution to present a coherent picture of the charged crime.

21. **Other Acts.** The State will not be prohibited from presenting a portion of its case merely because the actions of the defendant proving the State's case were criminal in nature.

22. **Jury Instructions: Judgments: Appeal and Error.** Whether a jury instruction given by a trial court is correct is a question of law. When reviewing questions of law, an appellate court has an obligation to resolve the questions independently of the conclusion reached by the trial court.

23. **Jury Instructions: Proof: Appeal and Error.** To establish reversible error from a court's failure to give a requested jury instruction, an appellant has the burden to show that (1) the tendered instruction is a correct statement of the law, (2) the tendered instruction was warranted by the evidence, and (3) the appellant was prejudiced by the court's failure to give the requested instruction.

24. **Appeal and Error.** For an alleged error to be considered by an appellate court, an appellant must both assign and specifically argue the alleged error.

25. ____. An argument that does little more than restate an assignment of error does not support the assignment, and an appellate court will not address it.

26. **Criminal Law: Motions for New Trial: Appeal and Error.** In a criminal case, a motion for new trial is addressed to the discretion of the trial court, and unless an abuse of discretion is shown, the trial court's determination will not be disturbed.

Appeal from the District Court for Lancaster County: Robert R. Otte, Judge. Affirmed.

Matt Catlett, of Law Office of Matt Catlett, for appellant.

Douglas J. Peterson, Attorney General, and Joe Meyer for appellee.

Pirtle, Bishop, and Arterburn, Judges.

Arterburn, Judge.

# I. INTRODUCTION

William E. Howell, Jr., was convicted by a jury of theft by unlawful taking. The district court subsequently sentenced him to 20 months' imprisonment and 12 months' postrelease supervision. Howell appeals from his conviction. On appeal, Howell assigns numerous errors, including that the district court erred in overruling his motion to suppress evidence obtained as a result of a warrantless search, in admitting hearsay into evidence, in denying his motions for mistrial made during the State's opening statement and closing argument, in not permitting him to explain the nature of his prior felony conviction, in admitting into evidence details about uncharged offenses, and in failing to properly instruct the jury.

Upon our review, we find no merit to Howell's assertions on appeal. Accordingly, we affirm his conviction for theft by unlawful taking.

# II. BACKGROUND

On December 2, 2016, the State filed an information charging Howell with three separate counts of theft by unlawful taking, pursuant to Neb. Rev. Stat. § 28-511 (Reissue 2016). The first count, a Class IV felony, alleged that Howell had exercised control over movable property of another, which property was valued at more than $1,500, but less than $5,000. See Neb. Rev. Stat. § 28-518(2) (Reissue 2016). The second count, a Class II misdemeanor, alleged that Howell had exercised control over movable property of another, a bicycle, which property was valued at less than $500. See § 28-518(4). The third count, a Class I misdemeanor, alleged that Howell

had exercised control over movable property of another, a second bicycle, which property was valued at more than $500, but less than $1,500. See § 28-518(3). Prior to trial, the second and third counts alleged in the information were dismissed because the district court granted Howell's motion for absolute discharge on speedy trial grounds.

The remaining charge against Howell stems from events which occurred in August and September 2016. Evidence adduced at trial revealed that on August 16, 2016, Shawn Fleischman discovered that his 2009 black Kawasaki Ninja 250R motorcycle had been stolen from in front of his residence near 42d and Adams Streets in Lincoln, Nebraska. Fleischman reported the theft to the Lincoln Police Department. He informed the officer who took the theft report that the motor-cycle was valued at $2,500. Fleischman testified similarly at trial.

Approximately 1 month later, on September 23, 2016, Officer Anthony Gratz, who at the time was an officer with the Lincoln Police Department, was investigating a string of motorcycle thefts which had been occurring in Lincoln. As a part of Gratz' investigation, he spoke with a confidential informant who had knowledge about the motorcycle which had been stolen from Fleischman. Specifically, the confidential informant told Gratz that Howell had taken a motorcycle from the area of 42d and Adams Streets in Lincoln to "a garage on North 27th Street, directly across from the Salvation Army." The confidential informant also told Gratz that Howell had "cut that motorcycle into pieces." Through further investigation, Gratz learned that the confidential informant was referring to a residence with a detached garage located on North 27th Street. Gratz learned from other officers that Howell "frequent[ed]" the area near that residence.

Just after midnight on September 24, 2016, Gratz drove by the residence on North 27th Street. When he drove by, he observed a black motorcycle parked in the driveway. The motorcycle appeared to have been painted "with a thick bed

liner." Gratz indicated that in his experience, that type of paint is "very common" on stolen motorcycles. Gratz suspected that the motorcycle parked in the driveway might be Fleischman's stolen motorcycle. Gratz waited for another uniformed officer to arrive and then approached the front door of the residence. Gratz knocked on the front door, but nobody answered. Gratz observed someone, who he believed to be Howell, walking through the living room of the residence. Soon, Howell appeared in the driveway from the back yard of the residence.

When talking with the officers, Howell indicated that the black motorcycle in the driveway was his. He told Gratz that he had purchased the motorcycle about a year ago. When Gratz pointed out that the motorcycle still had a "dealer style in-transit" on the back of it, Howell indicated that he had actually purchased the motorcycle within the past year. Howell was unable to provide Gratz with any specific information about where he purchased the motorcycle or provide any paperwork to demonstrate his ownership. Howell simply indicated that he had purchased the motorcycle from someone in Colorado.

Ultimately, Gratz determined that the motorcycle in the driveway was not Fleischman's stolen motorcycle because it was a 1989 model, rather than a 2009 model like Fleischman's motorcycle. However, Gratz continued to speak with Howell about the possibility of the stolen motorcycle being in the detached garage. Howell immediately told Gratz that there was not a stolen motorcycle in the garage. And, although Howell had been calm throughout the conversation with Gratz, when Gratz told Howell that he "had very specific information that the motorcycle . . . was currently in the garage [and] had been cut into pieces," Howell began to breathe heavily and pace. Howell admitted to Gratz that he did have property in the garage, including another motorcycle and a large quantity of tools. He then indicated that if there was a stolen motorcycle in the garage, he did not know anything about it.

At some point during the conversation, Howell offered to go into the garage himself to see if the stolen motorcycle was there. Howell paused for a while before entering the garage and then changed his mind. He told Gratz that he was concerned that if he turned over the stolen motorcycle, Gratz would arrest him. Howell then asked if he was free to leave. When Gratz answered affirmatively, Howell went inside the residence through the front door. While Gratz was still standing in the driveway, he observed Howell exit the rear of the residence and slowly walk over to the side door of the garage. Gratz informed Howell that he did not want Howell to enter the garage and try to remove or destroy evidence. Howell then left the residence on foot.

Police officers eventually searched the garage. Inside the garage, they found Fleischman's stolen motorcycle broken down into pieces and parts. In addition, they found two bicycles that had been reported as stolen. Gratz testified that he smelled "a very strong odor of what I would describe as . . . vehicle paint" in the garage.

Howell testified in his own defense. During his testimony, he contradicted much of Gratz' testimony about their conversation. Specifically, Howell testified that he told Gratz "no" when Gratz asked to look in the garage. Howell testified that he "wasn't the only one that had access to the garage[,] nor is it even technically [his] residence." Howell explained that although he had stayed at the residence "regularly" in the months leading up to September 24, 2016, his friends were the only two people on the lease. Howell admitted that he had been in the garage prior to September 24. In addition, he admitted that he had a key to the garage. However, contrary to Gratz' testimony, Howell indicated that the only two things he knew to be in the garage were a Honda motorcycle and tools. He denied that either one of these belonged to him. Howell also denied attempting to enter the garage after speaking with Gratz.

After hearing all of the evidence, the jury convicted Howell of theft by unlawful taking. It also found that the value of the

stolen motorcycle was $2,000. The district court subsequently sentenced Howell to 20 months' imprisonment, 12 months' postrelease supervision, and a $1,000 fine.

Howell appeals his conviction here.

## III. ASSIGNMENTS OF ERROR

On appeal, Howell assigns eight errors. Howell asserts that the district court erred in (1) denying his motion to suppress evidence obtained during the warrantless search of the garage, (2) admitting into evidence out-of-court statements made by the confidential informant and by police officers who did not testify, (3) denying his motions for mistrial which were made during the State's opening statement and closing argument, (4) allowing a police officer to testify about the value of the stolen motorcycle, (5) not permitting Howell to testify regarding the nature of his prior felony conviction, (6) admitting into evidence details about two stolen bicycles which were also located in the garage, (7) failing to properly instruct the jury, and (8) denying his motion for a new trial.

## IV. ANALYSIS

### 1. Motion to Suppress

#### (a) Standard of Review

[1] In reviewing a trial court's ruling on a motion to suppress based on a claimed violation of the Fourth Amendment, we apply a two-part standard of review. *State v. Wells*, 290 Neb. 186, 859 N.W.2d 316 (2015). Regarding historical facts, we review the trial court's findings for clear error. *Id*. But whether those facts trigger or violate Fourth Amendment protections is a question of law that we review independently of the trial court's determination. *Id*.

#### (b) Additional Background

Prior to trial, Howell filed a motion to suppress the evidence obtained during the warrantless search of the detached garage. A suppression hearing was held. At the hearing, Howell argued to the district court that the search did not fall under

any recognized exception to the warrant requirement, because he never provided police with consent to search the garage and because the consent provided by the two people leasing the residence, Jason Mayr and Amanda Vocasek, was not voluntarily given. The State called Gratz to testify that Mayr's and Vocasek's consent to search was, in fact, voluntarily given.

Gratz testified that after Howell left the residence, he decided to speak with the residents, Mayr and his girlfriend, Vocasek. Both Mayr and Vocasek came onto the front porch to speak with Gratz. During the conversation, both Mayr and Vocasek indicated that they had access to the detached garage and so did Howell. They explained that Howell paid them rent so that he could store property in the garage. Mayr indicated that only he and Howell had keys to the garage. He also indicated that he was unsure about where his garage key was located. When police indicated that it was possible to pick the lock of the garage without damaging anything, both Mayr and Vocasek expressed discomfort about police entering the garage without a key.

Ultimately, Gratz left the residence so that he could work on obtaining a search warrant. While Gratz was drafting his affidavit in support of a search warrant, he was informed that Mayr and Vocasek had located Mayr's key to the garage and that they had consented to the search by each signing a form labeled "Consent to Search Premises Without a Search Warrant." Gratz estimated that police entered the garage approximately 45 minutes to 1 hour after Howell had left the residence.

During his testimony at the motion to suppress hearing, Gratz explicitly denied that he ever threatened to arrest either Mayr or Vocasek if they did not consent to a search of the garage. He also denied that either Mayr or Vocasek expressed a desire to leave the residence.

Officer Quenton Smith also testified at the suppression hearing and generally corroborated Gratz' account of his interaction with Mayr and Vocasek. Smith testified that Mayr and

Vocasek stated that "they would love to be cooperative with officers," but that they simply did not know where Mayr's garage key was located. In addition, they stated that they did not want officers to damage the garage by attempting to gain access without a key. Smith stayed behind to secure the garage while Gratz left to work on obtaining a search warrant. Smith testified that while he was waiting, Mayr and Vocasek indicated that they had found the key and were willing to consent to the search.

Smith testified that no promises or threats were made to either Mayr or Vocasek in order to gain their consent to the search. Specifically, no one threatened to arrest either of them if they did not sign the consent form. Smith described Mayr and Vocasek as acting "normal" and indicated that they both "appeared to be extremely cooperative." Smith indicated that from the time he arrived on the scene, which was prior to Howell's leaving the residence, to the time of the search was "a little over an hour."

Mayr also testified at the suppression hearing and contradicted the officers' accounts of their interaction. Mayr indicated that Howell has been his "good friend[]" since the two were 18 or 19 years old. He also confirmed that in September 2016, Howell had a key to the residence and a key to the garage. Mayr explained that Howell rented space in the garage and stayed at the residence "more than half" of the time.

Mayr testified that when officers initially asked to search the garage, he told them "no." Mayr indicated that he told the officers that he and Vocasek wanted to leave the residence to go to the grocery store. He testified that officers told them they could not leave and that in fact, a police vehicle was used to block them from leaving. Mayr described how during the next couple hours, a spotlight shined directly into the residence. Police officers repeatedly came to the door attempting to obtain his and Vocasek's consent to search the garage. When he told police that he did not know where the key was and that he did not want them to pick the lock, police threatened to use a

battering ram and "destroy[] the garage." In addition, police told him that if a subsequent search revealed stolen property in the garage, Mayr and Vocasek would be arrested and jailed. Mayr stated that eventually, police told him if he did not sign the consent form, he would go to jail.

Mayr testified that ultimately, he signed the consent form "solely to avoid . . . being charged and arrested and taken to jail." He also wanted the police to leave his residence and turn off the spotlight. During the State's cross-examination of Mayr, he altered his rationale for signing the consent form. He stated that he and Vocasek consented to the search because they did not want police to obtain a search warrant and then possibly damage the garage while attempting to gain access.

At the suppression hearing, Howell offered into evidence the deposition of Vocasek. During her testimony, Vocasek confirmed that in September 2016, Howell lived in the residence about half of every week. She also confirmed that Howell had his own key to the residence and to the garage. Vocasek then described the events that took place after Howell left the residence on September 24, 2016. Vocasek described that two police officers knocked on the front door and asked for permission to search the garage. When she told them "no," police continued to ask for her consent to the search at least four more times. Vocasek indicated that she told police that she did not have a key to the garage and that she did not want them to "break[]" into the garage. Vocasek testified that during her conversation with police, Gratz indicated he could obtain a search warrant and then threatened to charge her with a crime if any stolen property was found in the garage and she had not consented to the search. When she and Mayr told police they wanted to leave the residence in order to go to the grocery store, she was told that they could not leave. Vocasek also described how her dog would not stop barking due to the police presence at the residence.

Vocasek testified that, ultimately, she gave the garage key to police and consented to the search because she did not want

to "be in trouble" if they obtained a search warrant and found stolen property and because she wanted the police to leave. Vocasek testified that police did not threaten to arrest her if she did not sign the form.

Howell also testified at the suppression hearing. He indicated that he considered Mayr's residence to also be his residence in September 2016. He explained that he had his own key and his own space within the residence. In addition, he paid Mayr $200 per month in rent. Howell indicated that he was in and out of the garage very frequently, but not all of the property in the garage was his.

After the suppression hearing, the district court entered a detailed order denying Howell's motion to suppress the evidence obtained during the search of the garage. In the order, the court found, "[T]he totality of the circumstances surrounding the consent by Vocasek and Mayr demonstrate that consent was given voluntarily." Specifically, the court found that police did not "over-step[] their boundary in describing the consequences that could unfold" if Vocasek and Mayr did not cooperate with police:

> They both were aware that the officers wanted to search the garage. In fact, they knew the officers were, in fact, going to search the garage whether Vocasek and Mayr consented to the search or not. The fact that the officer suggested they might be implicated if stolen property was found in the garage does not invalidate the verbal and written consents offered by Vocasek and Mayr.

The district court also explicitly stated that it did not find Mayr or Vocasek to be credible witnesses. The court stated, "The *after the fact* protestation of Vocasek and Mayr, while considered, ring[s] hollow." (Emphasis in original.)

### (c) Analysis

On appeal, Howell challenges the district court's decision to deny his motion to suppress the evidence found as a result of the search of the garage. Specifically, he asserts that the

evidence presented at the suppression hearing clearly demonstrated that Vocasek and Mayr did not voluntarily consent to the search of the garage. Instead, Howell asserts that their consent was coerced by the police officers' actions. Upon our review, we affirm the decision of the district court.

[2] It is well settled under the Fourth Amendment that warrantless searches and seizures are per se unreasonable, subject to a few specifically established and well-delineated exceptions. *State v. Tucker*, 262 Neb. 940, 636 N.W.2d 853 (2001). The warrantless search exceptions recognized by the Nebraska Supreme Court include: (1) searches undertaken with consent, (2) searches under exigent circumstances, (3) inventory searches, (4) searches of evidence in plain view, and (5) searches incident to a valid arrest. *State v. Wells*, 290 Neb. 186, 859 N.W.2d 316 (2015).

[3,4] To be effective under the Fourth Amendment, consent to a search must be a free and unconstrained choice not the product of a will overborne. *State v. Tucker, supra.* Consent must be given voluntarily and not as the result of duress or coercion, whether express, implied, physical, or psychological. *Id.* In determining whether consent was coerced, account must be taken of subtly coercive police questions, as well as the possibly vulnerable subjective state of the person who consents. See *State v. Prahin*, 235 Neb. 409, 455 N.W.2d 554 (1990). Mere submission to authority is insufficient to establish consent to a search. *State v. Tucker, supra.* The determination of whether a consent to search is voluntarily given is a question of fact to be determined from the totality of the circumstances. See *State v. Ready*, 252 Neb. 816, 565 N.W.2d 728 (1997). The burden is on the State to prove that consent to search was voluntarily given. See *State v. Prahin, supra.*

[5] In his brief on appeal, Howell relies on the testimonies of Mayr and Vocasek to demonstrate that their consent to search the garage was not voluntarily given. However, as we noted above, the district court did not find Mayr or Vocasek

to be credible witnesses. As such, the court relied on the testimonies of Gratz and Smith when ruling on the motion to suppress. In determining the correctness of a trial court's ruling on a suppression motion, an appellate court will accept the factual determinations and credibility choices made by the trial court unless, in light of all the circumstances, such findings are clearly erroneous. *State v. DeGroat*, 244 Neb. 764, 508 N.W.2d 861 (1993).

Upon our review of the record, we cannot say that the district court clearly erred in determining that Mayr and Vocasek did not provide credible testimony about the events which led up to their consent to search the garage. Evidence presented at the suppression hearing supported the district court's credibility finding. In particular, we note there was evidence that Mayr had suffered a brain injury and that as a result of this injury, he had problems with his memory. In addition, there were inconsistencies between Mayr's testimony and Vocasek's testimony. Although Mayr insisted that law enforcement threatened to arrest him if he did not sign the consent to search form, Vocasek testified that no such threat was made. Because the district court did not clearly err in its credibility finding, we, like the district court, rely on the testimonies of Gratz and Smith in analyzing the district court's decision to deny the motion to suppress.

Both Gratz and Smith testified that when they spoke with Mayr and Vocasek, both appeared to want to cooperate. In addition, Smith testified that both appeared to be acting "normal." Mayr's and Vocasek's only apparent hesitancy with allowing police to search the garage was that they did not know where Mayr's key was and that they did not want the garage damaged in any way by the police entering without a key. Once Mayr and Vocasek located the key, they brought it outside and gave it to Smith. They then signed the necessary consent forms.

Gratz explicitly denied that he ever threatened to arrest either Mayr or Vocasek. In addition, he denied telling Mayr

and Vocasek that they were not allowed to leave the residence. Gratz did admit that he explained to Mayr and Vocasek that if they did not consent to the search, he could obtain a search warrant. In fact, Gratz left the residence in order to start the process of obtaining a search warrant. However, a statement of a law enforcement agent that, absent a consent to search, a warrant can be obtained does not constitute coercion. See *State v. Tucker*, 262 Neb. 940, 636 N.W.2d 853 (2001).

Smith also denied that any promises or threats were made to Mayr and Vocasek to obtain their consent. Specifically, he testified that no one threatened to arrest either one of them if someone did not sign the consent form. Both Gratz and Smith indicated that their interactions with Mayr and Vocasek lasted approximately an hour.

Based on the totality of the facts and circumstances present, we cannot say that the district court erred in denying Howell's motion to suppress. The testimony of Gratz and Smith establishes that Mayr and Vocasek were cooperative and wanted to help police. Although Mayr and Vocasek initially denied police access to the garage because they could not find the key, once they did find the key, they readily provided police with such access. Moreover, the totality of the evidence indicates that Mayr's and Vocasek's consent to search was voluntarily given and not the result of coercion or duress. We affirm the decision of the district court.

### 2. Hearsay Evidence Admitted During Gratz' Trial Testimony

### (a) Standard of Review

[6] Apart from rulings under the residual hearsay exception, an appellate court reviews for clear error the factual findings underpinning a trial court's hearsay ruling and reviews de novo the court's ultimate determination to admit evidence over a hearsay objection. *State v. Schwaderer*, 296 Neb. 932, 898 N.W.2d 318 (2017).

(b) Additional Background

During Gratz' testimony at trial, he indicated that he had received information regarding his investigation of the stolen motorcycle from a confidential informant. Prior to Gratz' testifying to what this information entailed, Howell objected to the testimony. The court overruled the objection and permitted Howell to have a standing objection "as to that issue." Gratz then testified as follows:

> This confidential informant informed myself and my partner . . . at the time, I specifically asked about stolen motorcycles in the Lincoln area as there had been an increase in those occurring. The confidential informant . . . informed myself and [my partner] that . . . Howell had taken a motorcycle from the area of 42nd and Adams Street, and had taken it to a garage on North 27th Street, directly across from the Salvation Army, where at that location the [confidential informant] reported that . . . Howell had cut that motorcycle into pieces.

In the jury instructions, the district court addressed Gratz' testimony about what he learned from the confidential informant. Jury instruction No. 12 provides:

> During this trial there was evidence that was received for specified limited purposes.
>
> . . . .
>
> 2. Any evidence relating to statements made by a confidential informant to Officer Gratz were only offered by the state for the limited purpose of showing how and why Officer Gratz came to be at [the residence on] N. 27th on September 24, 2016. You must consider that evidence only for that limited purpose and for no other.

Later on in Gratz' trial testimony, the State asked whether he was able to determine whether Howell had any connection to the residence on North 27th Street, which was described by the confidential informant. Gratz responded to the question, stating, "I was already familiar with . . . Howell from prior investigations and had been in communication with other

officers about [him] frequenting that area. But besides the information received from those officers . . . I hadn't located any specific information [connecting] Howell to that address." Howell objected to Gratz' testimony. He argued that Gratz' statement that he learned from other officers that Howell "frequent[ed]" the area was cumulative evidence and was hearsay. The court overruled Howell's objections.

### (c) Analysis

On appeal, Howell challenges the district court's decision to overrule the objections he made to Gratz' testimony about what the confidential informant told him and about what he learned from other officers. He asserts that Gratz' testimony included hearsay and that such hearsay was prejudicial.

### (i) Information Received From Confidential Informant

Before we reach the merits of Howell's assertion on appeal that the district court erred in overruling his hearsay objection to Gratz' testimony about what the confidential informant told him, we must determine if Howell has preserved this issue for appellate review.

Prior to trial, Howell made a motion in limine to preclude Gratz from testifying about what the confidential informant told him. Howell argued that such testimony was hearsay and not relevant. The court overruled the motion in limine, stating:

> The motion in limine is a preliminary motion and is done in anticipation of certain things. It does not preclude the court from sustaining objections at trial but is appreciated by the court because it gives the court a little heads up as to what motions might be coming and gives the court some ability to think about those in advance.
>
> Having said that, the motion in limine is overruled in its entirety. . . .
>
> . . . .

As to why Officer Gratz was present, again, I think
that's part of the whole res justa of the crime and the
events leading up to it and why he's there. I think he
gets to testify as to why he was there and that the State
shouldn't have to have an open ended, officer just show-
ing up without a particular reason given, or the circum-
stances that underpin that event.

At trial, when the State asked Gratz about how he came into
information about the stolen motorcycle, Howell objected,
stating, "Your Honor, may I approach? I'm going to object
to the question. I think it's going to call for an answer that is
objectionable . . . ." During a conversation between Howell's
counsel, the State, and the court, outside the presence of the
jury, Howell's counsel informed the court that he was object-
ing to the form of the State's question. He also asserted that
how Gratz received the knowledge was not relevant. When
the State offered to rephrase the question, Howell's coun-
sel stated:

You guys all know what I'm trying to do here. So that's
the issue, is how he came into the information. I think it's
such a loaded, broad question that it invites him to give
an answer about what somebody told him. And I've made
that clear before and I'm going to make that — jump up
and down on that issue.

The court did not specifically rule on Howell's objections, but
did give the State the opportunity to rephrase the question.

Later, the State asked Gratz "what specific information did
you receive with regard to a stolen motorcycle?" Howell's
counsel told the court, "I'm going to object." The court over-
ruled the objection and indicated that Howell could "have a
standing objection as to that issue."

[7,8] Although it is clear that prior to trial, Howell objected
to Gratz' testimony about what the confidential informant told
him on the basis that such testimony was hearsay, a careful
reading of the record reveals that he did not specifically renew
his hearsay objection at trial. Error can be based on a ruling

that admits evidence only if the specific ground of objection is apparent either from a timely objection or from the context. *State v. Herrera*, 289 Neb. 575, 856 N.W.2d 310 (2014). The Supreme Court has interpreted this rule to mean that where there has been a pretrial ruling regarding the admissibility of evidence, a party must make a timely and specific objection to the evidence when it is offered at trial in order to preserve any error for appellate review. *Id*. Thus, when a motion in limine to exclude evidence is overruled, the movant must object when the particular evidence which was sought to be excluded by the motion is offered during trial to preserve error for appeal. *Id*. Similarly, the failure to object to evidence at trial, even though the evidence was the subject of a previous motion to suppress, waives the objection, and a party will not be heard to complain of the alleged error on appeal. *Id*.

Howell has failed to make a clear record of the basis for his objections to Gratz' testimony at trial. At trial, Howell failed to explicitly indicate that he was objecting to Gratz' testimony about what the confidential informant told him on the basis that the testimony was hearsay. He did assert a foundational objection and a relevance objection. In addition, he made a generalized objection to the line of questioning by the State. The closest Howell came to making a hearsay objection was during his conversation with the State and the district court outside the jury's presence. At one point during that conversation, Howell's counsel indicated that he was objecting to the State's question because the question "invites [Gratz] to give an answer about what somebody told him."

Ultimately, we need not decide if counsel's assertion that he was objecting to Gratz' testimony "about what somebody told him" is adequate to preserve his pretrial hearsay objection, because even if we consider him to have validly preserved this issue, his assertion is without merit.

[9,10] Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Neb.

Evid. R. 801(3), Neb. Rev. Stat. § 27-801(3) (Reissue 2016). Stated another way, if an out-of-court statement is not offered for the purpose of proving the truth of the facts asserted, it is not hearsay. *State v. Baker*, 280 Neb. 752, 789 N.W.2d 702 (2010). When overruling a hearsay objection on the ground that testimony about an out-of-court statement is received not for its truth but only to prove that the statement was made, a trial court should identify the specific nonhearsay purpose for which the making of the statement is relevant and probative. *Id.*

Here, the State argued that Gratz' testimony about what the confidential informant told him was not offered to prove the truth of the confidential informant's statements, but was instead offered to demonstrate why Gratz went to the residence on North 27th Street on September 24, 2016. The court did not explain the limited purpose of this testimony contemporaneously with Gratz' testimony, but within the jury instructions, the district court specifically informed the jury that it was only to consider what the confidential informant said to Gratz "for the limited purpose of showing how and why Officer Gratz came to be at [the residence on] N. 27th on September 24, 2016." In the instruction, the court then reiterated that the jury was only to consider the testimony "for that limited purpose and for no other."

The record reveals that the State offered Gratz' testimony about what the confidential informant told him not to prove the truth of the confidential informant's statements, but instead to demonstrate why Gratz went to the residence on North 27th Street on September 24, 2016. Although it would have been helpful for the district court to advise the jury about the limited purpose for which the evidence was received at the time the jury heard that evidence, we conclude that the district court's instruction to the jury at the end of trial was sufficient to inform the jury of the limited purpose of the testimony. Because the State did not offer the testimony to prove the truth of the confidential informant's statements and because

the district court explicitly instructed the jury about the limited purpose of that evidence, we conclude that Howell's assertions on appeal which relate to this issue are without merit.

### (ii) Information Received
### From Other Officers

[11,12] We find it unnecessary to address the admissibility of Gratz' testimony that he learned from other officers that Howell "frequent[ed]" the area of the pertinent residence on North 27th Street. Even if Gratz' testimony included inadmissible hearsay, we conclude the admission of such testimony was harmless. Generally, an "'erroneous admission of evidence is harmless error and does not require reversal if the evidence is cumulative and other relevant evidence, properly admitted, supports the finding by the trier of fact.'" *State v. Ildefonso*, 262 Neb. 672, 686, 634 N.W.2d 252, 265 (2001) (quoting *State v. Quintana*, 261 Neb. 38, 621 N.W.2d 121 (2001)). Harmless error review looks to the basis on which the jury actually rested its verdict. The inquiry is not whether in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the actual guilty verdict rendered was surely unattributable to the error. *State v. Burries*, 297 Neb. 367, 900 N.W.2d 483 (2017).

The admission of Gratz' testimony that other officers told him that Howell frequented the area of the pertinent residence on North 27th Street was harmless because there was other, admissible, evidence which demonstrated that Howell was frequently in the area of that residence in the months leading up to September 24, 2016. Howell, himself, testified that he was at the residence "regularly" in the months preceding September 24. He admitted that he had a key and uncontrolled access to the residence's detached garage. In addition, when Gratz arrived at the residence on September 24, Howell was inside the residence. Howell then left the residence to come outside to speak with police. This evidence, which was properly admitted and not objected to, demonstrates that Howell "frequent[ed]"

the area of the residence on North 27th Street. As a result, even if we were to assume Gratz' testimony included inadmissible hearsay, the admission of the testimony does not constitute reversible error.

### 3. MOTIONS FOR MISTRIAL

#### (a) Standard of Review

[13] Whether to grant a mistrial is within the trial court's discretion, and an appellate court will not disturb its ruling unless the court abused its discretion. *State v. Ramirez*, 287 Neb. 356, 842 N.W.2d 694 (2014).

#### (b) Additional Background

After the State completed its opening statement, Howell's counsel asked to approach the bench. In a conversation between Howell's counsel, the State, and the district court, Howell's counsel moved for a mistrial based on the State's reference during its opening statement to "what the confidential informant told . . . Gratz what Howell stole and that he has it sitting in his garage." Howell's counsel referenced his pretrial motion in limine on that subject. The district court overruled the motion for mistrial.

During the State's closing arguments, Howell's counsel again made a motion for mistrial when the State referenced what the confidential informant told Gratz. The court again overruled the motion.

#### (c) Analysis

On appeal, Howell asserts that the district court abused its discretion in overruling his motions for mistrial. We find his assertion to be without merit. In our analysis above, we found that the district court did not err in allowing Gratz to testify about what the confidential informant told him, given that the court instructed the jury to consider such evidence only for the limited purpose of why Gratz went to the residence on North 27th Street on September 24, 2016. Because this testimony was

admissible, the State was permitted to reference the evidence in its opening statement and closing argument in order to explain how Gratz' investigation unfolded. We note that in the jury instructions, the district court explicitly informed the jury that the statements and arguments by the lawyers are not to be considered as evidence. The district court did not abuse its discretion in overruling Howell's motions for mistrial.

## 4. Evidence of Value During Officer Scott Chandler's Testimony

### (a) Standard of Review

[14,15] In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by the Nebraska Evidence Rules; judicial discretion is involved only when the rules make discretion a factor in determining admissibility. *State v. Daly*, 278 Neb. 903, 775 N.W.2d 47 (2009). Where the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court, an appellate court reviews the admissibility of evidence for an abuse of discretion. *State v. Russell*, 292 Neb. 501, 874 N.W.2d 8 (2016).

### (b) Additional Background

During the trial, the State called Officer Scott Chandler to testify. Chandler testified that he took a report from Fleischman immediately after Fleischman discovered his motorcycle had been stolen. The State asked Chandler if Fleischman reported the value of the motorcycle. Chandler testified that Fleischman reported the value of the motorcycle to be $2,500. Howell moved to strike Chandler's testimony about value. He argued, "That is hearsay. That's an element of the crime, something the state would have to prove beyond a reasonable doubt. And I think that is not something this officer can testify to. That's a statement made out of court." The district court did not rule on Howell's objection. Instead, the State offered to ask a different question of Chandler. The State then proceeded to have the following exchange with Chandler: "Q. So . . .

Fleischman gave you an idea as to the value of that motor-cycle, correct? A. Yes. Q. And you documented that in your report; is that correct? A. Yes." These were the last questions asked of Chandler.

### (c) Analysis

On appeal, Howell argues that the district court erred in not granting his motion to strike Chandler's testimony regarding the value of the motorcycle. Howell asserts that the testimony was inadmissible hearsay. Upon our review, we find Howell's assertion has no merit.

Our review of the record reveals that Howell has waived his right to appeal this issue. The record indicates that the district court did not specifically rule on Howell's motion to strike Chandler's testimony and that Howell did not request the district court to make such a ruling. Instead, it appears that Howell was satisfied with the State's decision to ask less direct questions about value.

[16] It is well established that a party who fails to insist upon a ruling to a proffered objection waives that objection. *State v. Daly, supra*. The Supreme Court has explained that

> "'[i]f when inadmissible evidence is offered the party against whom such evidence is offered consents to its introduction, or fails to object, or to insist upon a ruling on an objection to the introduction of the evidence, and otherwise fails to raise the question as to its admissibility, he is considered to have waived whatever objection he may have had thereto, and the evidence is in the record for consideration the same as other evidence.'"

*Id.* at 928, 775 N.W.2d at 68-69 (quoting *State v. Nowicki*, 239 Neb. 130, 474 N.W.2d 478 (1991)). Because the district court did not rule on the motion to strike Chandler's testimony about value and Howell did not request such a ruling, he has waived his objections to the testimony.

We note that even if Howell did not waive his objection to Chandler's testimony about value and even if such testimony

was inadmissible hearsay, Howell's argument on appeal would still be without merit. Chandler's testimony about the value of the motorcycle was cumulative to Fleischman's trial testimony about the value of his stolen motorcycle. Chandler testified that Fleischman reported the value of the motorcycle to be $2,500. Fleischman testified at trial that the value of the motorcycle when it was stolen was $2,500. Keeping in mind the principles governing the erroneous admission of evidence and harmless error discussed earlier in this opinion, it is clear that even if we assume that Chandler's testimony about the value of the motorcycle was inadmissible hearsay, the admission of the testimony into evidence would not require reversal, because there is other evidence to establish the value of the stolen motorcycle.

## 5. Testimony Regarding Howell's Prior Felony Conviction

### (a) Additional Background

At trial, Howell testified in his own defense. The first question Howell's counsel asked during the direct examination was whether Howell had previously been convicted of a felony. Howell answered affirmatively. Counsel then asked Howell "what exactly was" the nature of his prior felony conviction. The State objected. The State argued:

> That's an improper question . . . the only thing that can be asked is whether [Howell] — or the prosecution can ask is have you been convicted of a felony offense in the past ten years, yes or no. There cannot be any inquiry whatsoever into the nature of the offense.

The district court sustained the State's objection, and Howell was not permitted to explain the particulars of his prior felony conviction.

### (b) Analysis

On appeal, Howell challenges the district court's decision to prohibit him from testifying about the particulars of his prior

felony conviction. Specifically, he argues that he should have been allowed to testify as to the nature of his felony conviction because the evidentiary rule which precludes questions about the particulars of a prior felony conviction "is intended to protect criminal defendants, not the State." Brief for appellant at 35. Upon our review, we affirm the decision of the district court to prohibit Howell's testimony about the specifics of his prior felony conviction.

[17,18] Neb. Evid. R. 609, Neb. Rev. Stat. § 27-609 (Reissue 2016), provides in part:

> (1) For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admitted if elicited from him or established by public record during cross-examination, but only if the crime (a) was punishable by death or imprisonment in excess of one year under the law under which he was convicted or (b) involved dishonesty or false statement regardless of the punishment.

The Supreme Court has previously held that when a defendant in a criminal case testifies in his own behalf, he is subject to the same rules of cross-examination as any other witness, including rule 609. See *State v. Pitts*, 212 Neb. 295, 322 N.W.2d 443 (1982). The Supreme Court has also provided specific instructions about the proper use of prior felony convictions during a defendant's testimony: "The purpose of Rule 609 is to allow the prosecution to attack the credibility of a testifying defendant, not to retry him for a separate crime or prejudice the jury by allowing unlimited access to the facts of an unrelated crime . . . ." *State v. Daugherty*, 215 Neb. 45, 47, 337 N.W.2d 128, 129 (1983). Once having established the conviction, the inquiry must end there, and it is improper to inquire into the nature of the crime, the details of the offense, or the time spent in prison as a result thereof. *State v. Johnson*, 226 Neb. 618, 413 N.W.2d 897 (1987).

The Supreme Court has previously noted that its interpretation of rule 609 provides a more limited cross-examination

regarding felony convictions than is provided for by other jurisdictions with a similarly worded rule. The Supreme Court has stated:

> While current construction of Neb. Evid. R. 609 prohibits mention of the name or identity of the crime in the conviction used for impeachment of a witness, by far the greater number of jurisdictions allow reference to the particular criminal offense underlying the conviction offered for a witness' impeachment in accordance with rules of evidence substantially similar to Neb. Evid. R. 609.

*State v. Olsan*, 231 Neb. 214, 222-23, 436 N.W.2d 128, 134 (1989).

The strict application of rule 609 has been discussed more recently in *State v. Castillo-Zamora*, 289 Neb. 382, 855 N.W.2d 14 (2014). In that case, the State properly impeached a defense witness during cross-examination by asking whether the witness had previously been convicted of a felony or crime of dishonesty. On redirect examination, defense counsel asked the witness if he had "'been convicted of a felony,'" to which the State objected. *Id.* at 388, 855 N.W.2d at 22. The trial court sustained the objection on the ground that rule 609 does not draw a distinction between felonies and crimes involving dishonesty and, therefore, does not permit counsel to question whether a witness was convicted of a felony or crime involving dishonesty. On appeal, the Supreme Court affirmed the decision of the district court to prohibit the defense witness from testifying regarding the specifics of his prior conviction. The Supreme Court explained:

> The inquiry is restricted, because a witness' conviction of a crime is meant to be used for whatever effect it has on only the credibility of the witness, and it is not meant to otherwise impact the jury's view of the character of the witness. Nebraska is among a small number of jurisdictions that has adopted this view. The vast majority of jurisdictions allow inquiry into the nature of the underlying conviction. But a long history of case law in

Nebraska strictly construing [rule 609] establishes that the nature of the underlying conviction does not matter for impeachment purposes. We see no reason to reconsider our prior [rule 609] jurisprudence and no reason why the rule should not be extended to redirect examination as well.

*State v. Castillo-Zamora*, 289 Neb. at 389, 855 N.W.2d at 22.

We recognize that the present case presents a unique factual scenario that has not yet been addressed in Nebraska. Here, it is the defendant, Howell, who desired to offer details of his prior felony conviction during his direct examination, apparently in an attempt to prevent the State from asking about the prior conviction during its cross-examination. When Howell attempted to provide further information about his prior conviction, the State objected to such testimony, relying on rule 609. At trial and on appeal, Howell has failed to provide any authority to support his proposition that this unique factual scenario should lead us to find an exception to the Supreme Court's strict application of rule 609, and we have been unable to find any such authority upon our own review. However, we are cognizant of the concern that the application of rule 609 in this instance could conflict with the rule prohibiting infringement of the defendant's right to testify in his own defense. See, e.g., *Rock v. Arkansas*, 483 U.S. 44, 55-56, 107 S. Ct. 2704, 97 L. Ed. 2d 37 (1987) ("[b]ut restrictions of a defendant's right to testify may not be arbitrary or disproportionate to the purposes they are designed to serve").

In light of our review of the precedent established by the Supreme Court as it relates to a strict application of rule 609, we are constrained to find that the district court did not err in prohibiting Howell from testifying as to the specifics of his prior felony conviction. Pursuant to rule 609, Howell was permitted to testify that he had previously been convicted of a felony or a crime involving dishonesty. He was not permitted to divulge the specifics of his prior conviction, as such information was not relevant to his credibility.

### 6. Evidence Regarding Stolen Bicycles

#### (a) Additional Background

Both prior to and during the trial, Howell objected to the admission of evidence that two stolen bicycles were found in the garage along with Fleischman's stolen motorcycle. Two hearings were held in conjunction with Howell's objections. At the first hearing, Gratz testified that police found two stolen, "high end" bicycles in the garage during their search. During the second hearing, the owner of one of the stolen bicycles testified about when and where his bicycle was stolen and about modifications that were made to the bicycle after it was stolen. At these hearings, the State argued that the evidence was admissible to prove its theory that Howell was operating a "chop shop" out of the garage where he was taking apart stolen motorcycles and bicycles.

Ultimately, the district court overruled Howell's objections to evidence regarding the stolen bicycles. The court found that such evidence was inextricably intertwined with the criminal charge which resulted from the stolen motorcycle. In the alternative, the court found that the evidence was admissible pursuant to Neb. Evid. R. 404, Neb. Rev. Stat. § 27-404 (Reissue 2016). Prior to the jury's hearing the testimony about the bicycles, and prior to deliberations, the court instructed the jury as follows:

> Any evidence relating to any bicycle found in the garage, was only offered by the state for specified limited purposes which is to show motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. It is for these limited purposes that the court allows evidence of other crimes not charged in the Information. You must consider that evidence only for those limited purposes and for no other.

#### (b) Analysis

On appeal, Howell argues that the district court erred in admitting evidence of the stolen bicycles found in the garage.

Howell asserts that such evidence is not relevant and that pursuant to rule 404, the State "failed to prove by clear and convincing and admissible evidence . . . that Howell had anything at all to do with the bicycles." Brief for appellant at 35 (emphasis omitted). We note Howell's argument in support of his contention focuses primarily on his belief that the Nebraska Evidence Rules apply at a pretrial 404 hearing and that as a result, the State could not offer hearsay evidence at such a hearing. Ultimately, we conclude that the district court did not err in determining that evidence of the stolen bicycles was inextricably intertwined with evidence of the stolen motorcycle so as to exclude such evidence from the parameters of rule 404(2). Because we find that evidence of the stolen bicycles did not constitute rule 404 evidence, it is not necessary for us to address Howell's assertion about whether the Nebraska Evidence Rules apply at a pretrial rule 404 hearing.

[19,20] Rule 404(2) provides the following:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he or she acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Rule 404(2) does not apply to evidence of a defendant's other crimes or bad acts if the evidence is inextricably intertwined with the charged crime. *State v. Burries*, 297 Neb. 367, 900 N.W.2d 483 (2017). Inextricably intertwined evidence includes evidence that forms part of the factual setting of the crime, or evidence that is so blended or connected to the charged crime that proof of the charged crime will necessarily require proof of the other crimes or bad acts, or if the other crimes or bad acts are necessary for the prosecution to present a coherent picture of the charged crime. *Id*. We find that the evidence presented regarding the stolen bicycles was necessary for the prosecution to present a coherent picture of the charged crime.

Evidence of the stolen bicycles was part of the factual setting surrounding law enforcement's search of the garage where the stolen motorcycle was located. At trial, Gratz testified about his observations of the garage on the night of the search. In addition, the State offered into evidence photographs of the garage. Gratz indicated that there were tools positioned throughout the garage. In particular, he noted that there were two air compressors in the garage which were "hooked up to an air brush for painting motorcycles." Gratz testified that once he was in the garage, he smelled "a very strong odor of what I would describe as paint or specifically vehicle paint." In addition, Gratz described how parts and pieces of the stolen motorcycle were dispersed throughout the garage. Gratz indicated that officers also found two bicycles in the garage. Later, the owner of one of the stolen bicycles testified that one of the bicycles found in the garage was his and explained how the bicycle had been modified after it was stolen from him.

[21] The record supports the district court's conclusion that evidence of the stolen bicycles was inextricably intertwined with evidence of the stolen motorcycle. Evidence of the stolen bicycles was instrumental in the State's ability to present a coherent picture of where the stolen motorcycle was located and what was going on at that location. We have previously stated that the State will not be prohibited from presenting a portion of its case merely because the actions of the defendant proving the State's case were criminal in nature. *State v. Wisinski*, 12 Neb. App. 549, 680 N.W.2d 205 (2004) (finding evidence that defendant was driving stolen truck when he was found to be in possession of stolen property was admissible, even though defendant had not been charged with stealing truck). See, also, *State v. Castellanos, ante* p. 310, 918 N.W.2d 345 (2018) (finding evidence that defendant was in possession of stolen firearm was inextricably intertwined with charged crime of possession of firearm by prohibited person).

The State's theory of the case was that Howell was operating a "chop shop" out of the garage where he was modifying stolen goods. Evidence which supported the State's theory was relevant to demonstrate an element of the charged crime—that Howell took or exercised control over the motorcycle with the intent to permanently deprive the owner of possession. The fact that the stolen motorcycle was found in pieces in a garage with a number of tools and with at least one bicycle which had also been modified from its original form provides a complete picture of the circumstances surrounding Howell's possession of the stolen motorcycle. Accordingly, we find that the district court did not err in admitting evidence of the stolen bicycles found in the garage during law enforcement's search.

### 7. Jury Instructions

#### (a) Standard of Review

[22] Whether a jury instruction given by a trial court is correct is a question of law. When reviewing questions of law, an appellate court has an obligation to resolve the questions independently of the conclusion reached by the trial court. *Roth v. Wiese*, 271 Neb. 750, 716 N.W.2d 419 (2006).

[23] To establish reversible error from a court's failure to give a requested jury instruction, an appellant has the burden to show that (1) the tendered instruction is a correct statement of the law, (2) the tendered instruction was warranted by the evidence, and (3) the appellant was prejudiced by the court's failure to give the requested instruction. *Id.*

#### (b) Background

During the jury instruction conference, Howell objected to two of the district court's proposed jury instructions: instruction No. 7 and instruction No. 12. Jury instruction No. 7 provided to the jury a definition of multiple terms associated with the elements of theft by unlawful taking, including, "'[o]n, about, or between'"; "'[m]ovable property'"; "'[d]eprive'";

"'[p]roperty of another'"; and "'[i]ntentionally.'" Howell requested that the district court also include a definition of the term "exercise control." Specifically, Howell proposed that the court should define "exercise control" for the jury as "the power and . . . intent to exercise control." The district court overruled Howell's request to alter proposed jury instruction No. 7.

The district court's proposed jury instruction No. 12 provided the jury with an explanation of evidence that was received for only a specified limited purpose. Ultimately, the court altered this instruction somewhat in accordance with the requests of Howell. Jury instruction No. 12, as read to the jury, provided as follows:

During this trial there was evidence that was received for specified limited purposes.

1. Any evidence relating to any bicycle found in the garage, was only offered by the state for specified limited purposes which is to show motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. It is for these limited purposes that the court allows evidence of other crimes not charged in the Information. You must consider that evidence only for those limited purposes and for no other.

2. Any evidence relating to statements made by a confidential informant to Officer Gratz were only offered by the state for the limited purpose of showing how and why Officer Gratz came to be at [the residence on] N. 27th on September 24, 2016. You must consider that evidence only for that limited purpose and for no other.

Although the district court did make some alterations to the jury instruction pursuant to Howell's requests, the district court declined to grant Howell's request to also include the specific purpose of the "statements made by the persons Officer Gratz testified were law enforcement officers that [Howell] frequented the residence located [on] N. 27th Street."

### (c) Analysis

In his brief on appeal, Howell assigns as error the district court's refusal to give his proposed jury instructions and in overruling his objections to jury instructions Nos. 7 and 12, which were read to the jury prior to deliberations. In the argument section of his brief, Howell restates the language contained in his proposed jury instructions Nos. 7 and 12. He then states, "The district judge refused these proposed instructions. . . . Instead, the district judge gave Jury Instruction[s] Nos. 7 and 12, over Howell's objections." Brief for appellant at 39. Howell does not provide any explanation as to his specific argument about why the given jury instructions were incorrect or why those instructions should have been replaced by his proposed instructions.

[24,25] For an alleged error to be considered by an appellate court, an appellant must both assign and specifically argue the alleged error. *State v. Smith*, 292 Neb. 434, 873 N.W.2d 169 (2016). An argument that does little more than restate an assignment of error does not support the assignment, and an appellate court will not address it. *Id*. Because Howell's argument simply restates the language of his proposed jury instruction and then restates his assigned error, the argument is not sufficient and we decline to consider this assigned error any further.

### 8. Motion for New Trial

### (a) Standard of Review

[26] In a criminal case, a motion for new trial is addressed to the discretion of the trial court, and unless an abuse of discretion is shown, the trial court's determination will not be disturbed. *State v. Hairston*, 298 Neb. 251, 904 N.W.2d 1 (2017).

### (b) Additional Background

After the jury found Howell guilty, he filed a timely motion for new trial pursuant to Neb. Rev. Stat. § 29-2101 (Reissue

2016). In the motion, he alleged that irregularity in the proceedings prevented him from having a fair trial; that there was misconduct by the jury, the State, or the witnesses for the State; that the verdict was not sustained by sufficient evidence; and that an error of law occurred at the trial.

At the hearing on his motion for new trial, Howell indicated he was abandoning his assertion that a new trial was warranted due to misconduct by the jury, the State, or the witnesses for the State. He did argue that a new trial was warranted because the district court admitted evidence of the stolen bicycles and allowed Gratz to testify about what a confidential informant told him. In addition, he argued that the district court erred in prohibiting him from testifying as to the nature of his felony conviction and in overruling his motion to suppress. Finally, Howell asserted that the State failed to sufficiently prove the value of the stolen motorcycle. The district court overruled the motion for new trial.

### (c) Analysis

Given our analyses regarding these issues raised in Howell's motion for new trial, we do not find that the district court abused its discretion in overruling the motion for new trial.

### V. CONCLUSION

Having found no error or, alternatively, only harmless error in the orders and rulings challenged by Howell herein, we hereby affirm Howell's conviction.

Affirmed.