Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
05/30/2023 09:07 AM CDT

**State of Nebraska, appellee, v.
Jarell C. Samuels, appellant.**

___ N.W.2d ___

Filed May 23, 2023.    No. A-22-077.

1. **Constitutional Law: Search and Seizure: Motions to Suppress:
   Appeal and Error.** In reviewing a trial court's ruling on a motion to
   suppress based on a claimed violation of the Fourth Amendment, an
   appellate court applies a two-part standard of review. Regarding histori-
   cal facts, an appellate court reviews the trial court's findings for clear
   error, but whether those facts trigger or violate the Fourth Amendment
   protections is a question of law that an appellate court reviews indepen-
   dently of the trial court's determination.
2. **Constitutional Law: Search and Seizure: Appeal and Error.** When
   reviewing whether a consent to search was voluntary, as to the historical
   facts or circumstances leading up to a consent to search, an appellate
   court reviews the trial court's findings for clear error. However, whether
   those facts or circumstances constituted a voluntary consent to search,
   satisfying the Fourth Amendment, is a question of law, which an appel-
   late court reviews independently of the trial court.
3. **Trial: Investigative Stops: Warrantless Searches: Appeal and Error.**
   The ultimate determinations of reasonable suspicion to conduct an
   investigatory stop and probable cause to perform a warrantless search
   are reviewed de novo, and findings of fact are reviewed for clear error,
   giving due weight to the inferences drawn from those facts by the
   trial judge.
4. **Rules of Evidence.** In proceedings where the Nebraska Evidence Rules
   apply, the admissibility of evidence is controlled by the Nebraska
   Evidence Rules and judicial discretion is involved only when the rules
   make discretion a factor in determining admissibility.
5. **Rules of Evidence: Appeal and Error.** Where the Nebraska Evidence
   Rules commit the evidentiary question at issue to the discretion

of the trial court, an appellate court reviews the admissibility of evidence for an abuse of discretion.

6. **Convictions: Evidence: Appeal and Error.** Regardless of whether the evidence is direct, circumstantial, or a combination thereof, and regardless of whether the issue is labeled as a failure to direct a verdict, insufficiency of the evidence, or failure to prove a prima facie case, the standard is the same: In reviewing a criminal conviction, an appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact, and a conviction will be affirmed, in the absence of prejudicial error, if the evidence admitted at trial, viewed and construed most favorably to the State, is sufficient to support the conviction.

7. **Motions for Mistrial: Appeal and Error.** An appellate court will not disturb a trial court's decision whether to grant a motion for mistrial unless the court has abused its discretion.

8. **Sentences: Appeal and Error.** A sentence imposed within the statutory limits will not be disturbed on appeal in the absence of an abuse of discretion by the trial court.

9. **Constitutional Law: Search and Seizure.** Both the Fourth Amendment to the U.S. Constitution and article I, § 7, of the Nebraska Constitution guarantee against unreasonable searches and seizures.

10. **Search and Seizure: Evidence: Trial.** Evidence obtained as the fruit of an illegal search or seizure is inadmissible in a state prosecution and must be excluded.

11. **Constitutional Law: Police Officers and Sheriffs: Search and Seizure: Appeal and Error.** To determine whether an encounter between an officer and a citizen reaches the level of a seizure under the Fourth Amendment to the U.S. Constitution, an appellate court employs the analysis set forth in *State v. Van Ackeren*, 242 Neb. 479, 495 N.W.2d 630 (1993), which describes the three levels, or tiers, of police-citizen encounters.

12. **Constitutional Law: Police Officers and Sheriffs: Search and Seizure: Arrests.** A tier-one police-citizen encounter involves the voluntary cooperation of the citizen elicited through noncoercive questioning and does not involve any restraint of liberty of the citizen. Because tier-one encounters do not rise to the level of a seizure, they are outside the realm of Fourth Amendment protection. A tier-two police-citizen encounter involves a brief, nonintrusive detention during a frisk for weapons or preliminary questioning. A tier-three police-citizen encounter constitutes an arrest, which involves a highly intrusive or lengthy search or detention. Tier-two and tier-three police-citizen

encounters are seizures sufficient to invoke the protections of the Fourth Amendment to the U.S. Constitution.

13. **Constitutional Law: Search and Seizure.** A seizure in the Fourth Amendment context occurs only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he or she was not free to leave.

14. ____: ____. In addition to situations where an officer directly tells a suspect that he or she is not free to go, circumstances indicative of a seizure may include the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the citizen's person, or the use of language or tone of voice indicating the compliance with the officer's request might be compelled.

15. **Police Officers and Sheriffs: Search and Seizure.** A seizure does not occur simply because a law enforcement officer approaches an individual and asks a few questions or requests permission to search an area, provided the officer does not indicate that compliance with his or her request is required.

16. **Investigative Stops: Motor Vehicles: Police Officers and Sheriffs.** Although a police officer can inquire into matters unrelated to the justification for a traffic stop if it does not measurably extend the duration of the stop, it is unlawful to prolong a stop beyond the time reasonably required to complete the mission of the stop.

17. **Investigative Stops: Motor Vehicles: Police Officers and Sheriffs: Probable Cause.** A traffic stop can be extended if the officer has a reasonable, articulable suspicion that the motorist is involved in criminal activity unrelated to the traffic violation.

18. **Probable Cause: Words and Phrases.** Reasonable suspicion entails some minimal level of objective justification for detention, something more than an inchoate and unparticularized hunch, but less than the level of suspicion required for probable cause.

19. **Police Officers and Sheriffs: Probable Cause.** Whether a police officer has a reasonable suspicion based on sufficient articulable facts depends on the totality of the circumstances.

20. **Probable Cause.** Factors that would independently be consistent with innocent activities may nonetheless amount to reasonable suspicion when considered collectively.

21. **Investigative Stops: Motor Vehicles: Police Officers and Sheriffs: Probable Cause.** An officer's suspicion of criminal activity may reasonably grow over the course of a traffic stop as the circumstances unfold and more suspicious facts are uncovered.

22. **Constitutional Law: Search and Seizure.** The determination of whether the facts and circumstances constitute a voluntary consent to a search, satisfying the Fourth Amendment, is a question of law.

23. **Search and Seizure: Duress.** For consent to be voluntarily given, it must be a free and unconstrained choice, not the product of a will over-borne, and it cannot be given as the result of duress or coercion, whether express, implied, physical, or psychological.

24. ____: ____. In determining whether consent was coerced, account must be taken of subtly coercive police questions, as well as the possibly vulnerable subjective state of the person who consents.

25. **Search and Seizure.** Mere submission to authority is insufficient to establish consent to a search.

26. ____. Although the fact that an individual is in police custody is an important consideration in determining the voluntariness of the consent to search, such factor, standing alone, does not invalidate the consent to search as long as the consent was otherwise voluntarily given.

27. ____. The determination of whether consent to a search was freely and voluntarily given is based on the totality of the circumstances.

28. **Police Officers and Sheriffs: Search and Seizure.** A determination of whether consent to a search was sufficiently attenuated is necessary only when the consent was obtained as a result of additional inquiries made during a seizure after the authority for a seizure has expired.

29. **Trial: Pretrial Procedure: Pleadings: Evidence: Juries: Appeal and Error.** A motion in limine is a procedural step to prevent prejudicial evidence from reaching the jury. It is not the office of a motion in limine to obtain a final ruling upon the ultimate admissibility of the evidence. Therefore, when a court overrules a motion in limine to exclude evidence, the movant must object when the particular evidence is offered at trial in order to predicate error before an appellate court.

30. **Pretrial Procedure: Pleadings: Appeal and Error.** An appellant who has assigned only that the trial court erred in denying a motion in limine has not triggered appellate review of the evidentiary ruling at trial.

31. **Evidence: Pleas.** Whether a codefendant's guilty plea is admissible evidence turns upon whether it was properly offered to help the jury assess the codefendant's credibility or was improperly offered as substantive evidence of the defendant's guilt.

32. **Criminal Law: Convictions: Evidence.** Evidence that another person has been convicted of the same crime for which the defendant is on trial is not admissible as proof of the guilt of the defendant. The same evidence, however, may be admissible for other reasons.

33. **Evidence: Convictions: Pleas: Prosecuting Attorneys: Jury Instructions.** Under proper instruction, evidence of a codefendant's

guilty plea or conviction may be elicited by the prosecutor on direct examination so that the jury may assess the credibility of the witness that the government asks it to believe. However, even when such evidence is admissible, a curative instruction is required when requested by the defendant's counsel.

34. **Weapons: Circumstantial Evidence.** The doctrine of constructive possession has been extended to the crime of possession of a firearm by a felon under Neb. Rev. Stat. § 28-1206 (Cum. Supp. 2022).

35. **Evidence: Words and Phrases.** Constructive possession means the possessor did not have actual possession but was aware of the presence of the contraband and had dominion or control over it.

36. **Evidence.** Two persons may have constructive possession, or one may have actual possession and the other have constructive possession.

37. **Evidence: Proof.** Constructive possession may be proved by direct or circumstantial evidence and may be shown by the accused's proximity to the item at the time of the arrest or by a showing of dominion over it.

38. **Criminal Law: Motions for Mistrial.** A mistrial is properly granted in a criminal case where an event occurs during the course of trial which is of such a nature that its damaging effect cannot be removed by proper admonition or instruction to the jury and thus prevents a fair trial.

39. **Motions for Mistrial: Proof.** A defendant faces a higher threshold than merely showing a possibility of prejudice when attempting to prove error predicated on the failure to grant a mistrial.

40. **Motions for Mistrial: Proof: Appeal and Error.** To prove error predicated on the failure to grant a mistrial, the defendant must prove the alleged error actually prejudiced him or her, rather than creating only the possibility of prejudice.

41. **Jurors: Jury Instructions: Presumptions.** Absent evidence to the contrary, the legal system presumes that jurors, to the extent they are able, will comply with curative instructions and judicial admonitions.

42. **Courts: Motions for Mistrial: Motions for New Trial: Appeal and Error.** A trial court is vested with considerable discretion in passing on motions for mistrial and new trial, and an appellate court will not disturb a trial court's decision whether to grant a motion for mistrial or a motion for new trial unless the court has abused its discretion.

43. **Appeal and Error.** It is an abuse of discretion to make an error of law or clear errors of factual determination.

44. **Judges: Witnesses: Appeal and Error.** An appellate court's deference to the trial court stems in part from the recognition that the trial judge is better situated than a reviewing court to pass on questions of witness credibility and the surrounding circumstances and atmosphere of the trial.

45. **Controlled Substances.** Under the criminal narcotics statutes, possession may be either actual or constructive.

46. ____. Possession of a controlled substance means either (1) knowingly having it on one's person or (2) knowing of the substance's presence and having control over the substance.

47. **Controlled Substances: Evidence: Proof.** Evidence that a defendant had constructive possession of a drug with knowledge of its presence and its character as a controlled substance is sufficient to support a finding of possession and to sustain a conviction for unlawful possession.

48. **Investigative Stops: Motor Vehicles.** The fact that one is the driver of a vehicle, particularly over a long period of time, creates an inference of control over items in the vehicle.

49. **Sentences: Appeal and Error.** When sentences imposed within statutory limits are alleged on appeal to be excessive, the appellate court must determine whether the sentencing court abused its discretion in considering well-established factors and any applicable legal principles.

50. **Sentences.** The relevant factors for a sentencing judge to consider when imposing a sentence are the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the amount of violence involved in the commission of the crime.

51. ____. The sentencing court is not limited to any mathematically applied set of factors, but the appropriateness of the sentence is necessarily a subjective judgment that includes the sentencing judge's observations of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life.

52. ____. For a defendant who has been sentenced consecutively for two or more crimes, courts generally consider the aggregate sentence to determine if it is excessive.

53. ____. A sentencing court is not required to articulate on the record that it has considered each sentencing factor or to make specific findings as to the facts that bear on each of those factors.

Appeal from the District Court for Lancaster County: RYAN S. POST, Judge. Affirmed.

Matthew K. Kosmicki for appellant.

Douglas J. Peterson, Attorney General, and Nathan A. Liss for appellee.

Moore, Bishop, and Welch, Judges.

Welch, Judge.

## I. INTRODUCTION

Jarell C. Samuels appeals from his convictions and sentences for possession of a firearm by a prohibited person and possession of marijuana weighing more than 1 pound. He argues that the district court erred in denying various pretrial motions, granting the State's motion in limine, overruling his motion for a mistrial, finding that the evidence was sufficient to support his convictions, and imposing excessive sentences. For the reasons stated herein, we affirm.

## II. STATEMENT OF FACTS

### 1. Facts Leading to Arrest

On June 5, 2020, Lincoln police officer John Hudec was traveling on Interstate 80 when he observed a vehicle with out-of-state plates driving on the yellow shoulder line. Officer Hudec's radar clocked the vehicle going 74 m.p.h. in a 65-m.p.h. zone. He also observed that the vehicle was following too closely and failed to signal a lane change. The events of the traffic stop were captured on Officer Hudec's cruiser camera and were received into evidence at trial.

After learning that the vehicle was rented, Officer Hudec approached the vehicle and contacted the driver, Samuels, and the front seat passenger. Samuels provided Officer Hudec with his identification but did not have registration or rental paperwork for the vehicle. Officer Hudec requested that Samuels accompany him to his cruiser while he issued him a warning. Officer Hudec completed a data check on Samuels that indicated Samuels had a substantial criminal history, including involvement with narcotics.

Officer Hudec observed that, even though he was only issuing a warning, Samuels appeared nervous during their

interactions. Samuels indicated that he and the passenger were returning from Colorado, where they visited Samuels' sister. Officer Hudec stated that while questioning Samuels, he observed an artery in Samuels' neck pulsating, and Samuels was unable to provide any paperwork or information as to who had rented the vehicle that he was driving.

In order to obtain more information on the rental vehicle, Officer Hudec exited his cruiser to obtain the "VIN number" from the vehicle. During this time, he asked the passenger about the nature of the trip. The passenger responded that he and Samuels were returning to Des Moines, Iowa, from protests in "Hampton." Officer Hudec was familiar with Hampton, Nebraska, but was not aware of a Hampton, Colorado.

Officer Hudec returned to the cruiser and, after issuing the warning and returning Samuels' documents, stated, "I'll give you this and you're good to go man. Be safe and have a good rest of your trip." Before Samuels exited the cruiser, Officer Hudec stated, "[R]eal quick, let me ask you real quick before you get away . . . ." Officer Hudec asked if there was contraband in the vehicle and Samuels responded that there was not. Officer Hudec then received consent from Samuels to search the vehicle. While the vehicle was searched, Samuels and his passenger were placed in the back seat of the cruiser for their safety and officer safety. During the search of the vehicle, Officer Hudec and another officer who had been called to assist located a 9-mm pistol, including a magazine and six rounds of ammunition, under the floormat of the front passenger seat. Officers also located a bag in the rear cargo area that contained approximately 1.9 pounds of marijuana in dispensary containers, several receipts, and a cell phone. The receipts showed purchases from various marijuana dispensaries in Colorado made the previous day. There was also a receipt dated 2 days prior from a gas station in Des Moines, Iowa.

During the search of the rental vehicle, the cruiser camera was still recording and captured a conversation between

Samuels and the passenger wherein the passenger stated, "I can't take that pipe, bro," referring to the pistol. Samuels asked the passenger why he did not hide it, and the passenger responded, "Bitch, I put it under the floorboard under the rug." During the conversation, the passenger also asked whether the officers "kn[e]w that's weed" as the officers searched the cargo area of the vehicle. The two began discussing what they had told Officer Hudec about their trip; the passenger reiterated that he "'can't take the pipe,'" and Samuels responded, "I got you."

Following the search of the vehicle, Officer Hudec read both Samuels and the passenger their *Miranda* rights, which they waived. When asked by Officer Hudec how much marijuana was in the rental vehicle, neither party responded. Once Officer Hudec again exited the cruiser, the cruiser camera captured the parties discussing what they believed the amount of marijuana in the vehicle was—under 2 pounds. When Officer Hudec returned and asked to whom the gun belonged, Samuels stated that "it's mine." In response to Officer Hudec's questions, Samuels stated that the gun was a 9-mm pistol that he had purchased a long time ago, and he declined to consent to a DNA test. When Officer Hudec asked whether the passenger's DNA would be found on the pistol, the passenger said no but also declined to take a DNA test. Officer Hudec again left the cruiser, and the camera recorded the passenger apologizing to Samuels stating that "it's my fault," because he had asked Samuels to come on the trip.

As a result of these events, Samuels was charged with possession of a firearm by a prohibited person, a Class ID felony, and possession of marijuana weighing more than 1 pound, a Class IV felony.

## 2. PRETRIAL MOTIONS

Prior to trial, Samuels filed a motion to suppress evidence and statements obtained by law enforcement as violative of his constitutional rights. In his motion, he argued that because

an officer continued to detain him after giving him a warning, his consent to search was involuntarily obtained. The district court overruled Samuels' motion to suppress finding that Samuels and the passenger gave inconsistent versions of the origin and destination of their trip and that nothing in the record, including Samuels' own testimony, indicated Samuels' statements or subsequent consent to search was involuntary.

Samuels also filed two motions in limine in which he sought to preclude the State from adducing text messages, videos, and photographic evidence obtained from a cell phone that had been seized during the search of the vehicle. In his motions, Samuels argued that the evidence contained on the cell phone lacked foundation, was irrelevant, was unfairly prejudicial, and was improper character evidence. The district court overruled his motions.

Prior to trial, the State also filed a motion in limine to preclude Samuels from adducing evidence related to the passenger's conviction and sentence on the same charges, arguing that the evidence was hearsay, assumed facts not in evidence, was inadmissible character evidence, and would mislead the jury. During the hearing on the motion, Samuels argued that preventing him from adducing evidence of the passenger's conviction for possession of a firearm denied him his constitutional right to present a complete defense. The district court disagreed and found that Samuels could elicit testimony regarding the passenger's possession of the firearm without introducing evidence of the passenger's conviction and sentence for that offense.

## 3. Jury Trial

During the trial, evidence, including testimony by Officer Hudec, was adduced consistent with the facts as previously described above. As to the charge of possession of a firearm by a prohibited person, the parties stipulated that Samuels had previously been convicted of a felony. Evidence adduced at trial also established that an extraction of the seized cell

phone elicited various text messages, pictures, and videos that confirmed the cell phone seized belonged to Samuels. Additionally, evidence confirmed that the substance seized was marijuana. To determine the weight of the marijuana, officers matched dispensary receipts to the individual dispensary packages.

Other evidence was adduced related to DNA found on the firearm, the magazine, and the rounds inside of the magazine. The evidence established that there was a mixture of three individuals' DNA on the firearm, but that Samuels was excluded as a major contributor. The mixture of DNA found on the firearm was 1 septillion (1 followed by 26 zeroes) more likely to have originated from the passenger and two unknown, unrelated individuals. Further, both Samuels and the passenger were excluded as major contributors of DNA located on the magazine and the rounds located inside the magazine. After the State rested its case, Samuels moved for a directed verdict that was denied. Samuels did not present any evidence and the matter was submitted to the jury.

### 4. Convictions and Sentences

The jury found Samuels guilty of both charged offenses. Following a sentence enhancement hearing, the district court determined that Samuels was a habitual criminal. At sentencing, the district court stated:

> I've read and reviewed the Presentence Investigation, considered the comments of counsel as well as the relevant statutory factors and considered that you are 34 years old. You have . . . a GED. Your background, as counsel noted, your past criminal record, considering these particular offenses and the nature of these offenses, having considered all of that information, and regarding the nature and circumstances of the crimes as well as your history, character and condition, I do find that imprisonment is necessary for the protection of the public, because there is a substantial risk [Samuels] would engage in criminal conduct, and a lesser sentence

would depreciate the seriousness of the crime and promote disrespect for the law.

The court sentenced Samuels to 10 to 15 years' imprisonment for possession of a firearm by a prohibited person and 10 to 11 years' imprisonment for possession of more than 1 pound of marijuana. Due to the habitual criminal enhancement, each conviction carried a mandatory minimum sentence of 10 years' imprisonment, and the sentences were ordered to run consecutively to each other and consecutively to any sentence previously imposed on Samuels. Samuels was granted credit for 580 days served. Samuels now appeals from his convictions and sentences.

## III. ASSIGNMENTS OF ERROR

Samuels assigns, restated and renumbered, that the district court erred (1) in denying Samuels' motion to suppress and overruling his related objections at trial, (2) in denying Samuels' motion in limine, (3) in sustaining the State's motion in limine, and (4) in overruling Samuels' motion for a mistrial. He also contends that (5) the evidence was insufficient to prove Samuels' guilt beyond a reasonable doubt and (6) the sentences imposed were excessive.

## IV. STANDARD OF REVIEW

[1] In reviewing a trial court's ruling on a motion to suppress based on a claimed violation of the Fourth Amendment, an appellate court applies a two-part standard of review. *State v. Tyler*, 291 Neb. 920, 870 N.W.2d 119 (2015). Regarding historical facts, an appellate court reviews the trial court's findings for clear error, but whether those facts trigger or violate the Fourth Amendment protections is a question of law that an appellate court reviews independently of a trial court's determination. *State v. Tyler, supra.*

[2] Likewise, an appellate court will apply the same two-part analysis when reviewing whether a consent to search was voluntary. *Id.* As to the historical facts or circumstances leading up to a consent to search, an appellate court will

review a trial court's findings for clear error. *Id.* However, whether those facts or circumstances constituted a voluntary consent to search, satisfying the Fourth Amendment, is a question of law, which an appellate court will review independently of a trial court. *State v. Tyler, supra*.

[3] The ultimate determinations of reasonable suspicion to conduct an investigatory stop and probable cause to perform a warrantless search are reviewed de novo, and findings of fact are reviewed for clear error, giving due weight to the inferences drawn from those facts by the trial judge. *State v. Shiffermiller*, 302 Neb. 245, 922 N.W.2d 763 (2019).

[4,5] In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by the Nebraska Evidence Rules and judicial discretion is involved only when the rules make discretion a factor in determining admissibility. *State v. Figures*, 308 Neb. 801, 957 N.W.2d 161 (2021). Where the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court, an appellate court reviews the admissibility of evidence for an abuse of discretion. *State v. Figures, supra*.

[6] Regardless of whether the evidence is direct, circumstantial, or a combination thereof, and regardless of whether the issue is labeled as a failure to direct a verdict, insufficiency of the evidence, or failure to prove a prima facie case, the standard is the same: In reviewing a criminal conviction, an appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact, and a conviction will be affirmed, in the absence of prejudicial error, if the evidence admitted at trial, viewed and construed most favorably to the State, is sufficient to support the conviction. *State v. Cerros*, 312 Neb. 230, 978 N.W.2d 162 (2022); *State v. Pauly*, 311 Neb. 418, 972 N.W.2d 907 (2022).

[7] An appellate court will not disturb a trial court's decision whether to grant a motion for mistrial unless the court has abused its discretion. *State v. Figures, supra*.

[8] A sentence imposed within the statutory limits will not be disturbed on appeal in the absence of an abuse of discretion. *State v. Blake*, 310 Neb. 769, 969 N.W.2d 399 (2022).

## V. ANALYSIS

### 1. Motion to Suppress

Samuels first assigns that the district court erred in denying his motion to suppress evidence and statements obtained by law enforcement during the traffic stop. Although Samuels concedes the initial stop of the vehicle was proper, he contends that the initial stop was improperly extended beyond the scope of the traffic violation because Officer Hudec did not have reasonable suspicion to extend the stop beyond the purpose of the traffic violation and that his subsequent consent to search the vehicle was not voluntary.

[9-15] In *State v. Hartzell*, 304 Neb. 82, 90-91, 933 N.W.2d 441, 448-49 (2019), the Nebraska Supreme Court addressed the tiers of police-citizen encounters for determining Fourth Amendment violations:

Both the Fourth Amendment to the U.S. Constitution and article I, § 7, of the Nebraska Constitution guarantee against unreasonable searches and seizures. Evidence obtained as the fruit of an illegal search or seizure is inadmissible in a state prosecution and must be excluded.

To determine whether an encounter between an officer and a citizen reaches the level of a seizure under the Fourth Amendment to the U.S. Constitution, an appellate court employs the analysis set forth in *State v. Van Ackeren*, [242 Neb. 479, 495 N.W.2d 630 (1993),] which describes the three levels, or tiers, of police-citizen encounters. A tier-one police-citizen encounter involves the voluntary cooperation of the citizen elicited through noncoercive questioning and does not involve any restraint of liberty of the citizen. Because tier-one encounters do not rise to the level of a seizure, they are outside the realm of Fourth Amendment protection. A tier-two police-citizen

encounter involves a brief, nonintrusive detention during a frisk for weapons or preliminary questioning. A tier-three police-citizen encounter constitutes an arrest, which involves a highly intrusive or lengthy search or detention. Tier-two and tier-three police-citizen encounters are seizures sufficient to invoke the protections of the Fourth Amendment to the U.S. Constitution.

A seizure in the Fourth Amendment context occurs only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he or she was not free to leave. In addition to situations where an officer directly tells a suspect that he or she is not free to go, circumstances indicative of a seizure may include the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the citizen's person, or the use of language or tone of voice indicating the compliance with the officer's request might be compelled. A seizure does not occur simply because a law enforcement officer approaches an individual and asks a few questions or requests permission to search an area, provided the officer does not indicate that compliance with his or her request is required.

Here, the evidence established that Samuels was initially stopped for violations of the rules of the road and Samuels concedes the legality of the initial traffic stop. The traffic stop resulted in a tier-two seizure sufficient to invoke the protections of the Fourth Amendment. See *State v. Hartzell, supra*. After stopping the vehicle, Officer Hudec conducted an investigation reasonably related in scope to the circumstances that justified the stop. Officer Hudec then provided Samuels with a written warning. While Samuels was still sitting in the cruiser, Officer Hudec told Samuels that he was "good to go" and then continued to ask Samuels a series of questions about whether Samuels had drugs in the rental vehicle and whether he consented to a search of the vehicle. After reviewing the cruiser-camera video of this exchange, we find

that the circumstances do not indicate the traffic stop had de-escalated despite Officer Hudec's admonition that Samuels was "good to go." As such, we must next determine whether Samuels' consent was obtained in violation of his Fourth Amendment rights.

In *Rodriguez v. U.S.*, 575 U.S. 348, 135 S. Ct. 1609, 191 L. Ed. 2d 492 (2015), the U.S. Supreme Court addressed the seizure of the driver and the vehicle in order to conduct a dog sniff after the traffic stop had been completed. The U.S. Supreme Court reiterated that the tolerable duration of a traffic stop is that which is reasonably necessary to address the mission of the stop and the ordinary inquiries incident thereto, and it clarified that a drug detection dog sniff is not an ordinary incident of a traffic stop. Since it was undisputed in *Rodriguez* that the delay for purposes of conducting the dog sniff occurred beyond the time reasonably necessary to complete the tasks tied to the traffic infraction that justified the stop, the Court vacated the circuit court's judgment, which had held that the prolonged seizure was an acceptable de minimis intrusion. The Court noted, however, that it remained open for the circuit court on remand to determine whether reasonable suspicion of criminal activity justified detaining the driver beyond completion of the traffic infraction investigation.

[16-19] Thus, although a police officer can inquire into matters unrelated to the justification for a traffic stop if it does not measurably extend the duration of the stop, it is unlawful to prolong a stop beyond the time reasonably required to complete the mission of the stop. *Id*. However, a traffic stop can be extended if the officer has "a reasonable, articulable suspicion that the motorist is involved in criminal activity unrelated to the traffic violation." *State v. Draganescu*, 276 Neb. 448, 461, 755 N.W.2d 57, 74 (2008).

> Reasonable suspicion entails some minimal level of objective justification for detention, something more than an inchoate and unparticularized hunch, but less

than the level of suspicion required for probable cause. Whether a police officer has a reasonable suspicion based on sufficient articulable facts depends on the totality of the circumstances. Reasonable suspicion must be determined on a case-by-case basis.

*State v. Howard*, 282 Neb. 352, 360, 803 N.W.2d 450, 460 (2011).

[20-21] We further note that factors that would independently be consistent with innocent activities may nonetheless amount to reasonable suspicion when considered collectively. *State v. Khalil*, 25 Neb. App. 449, 908 N.W.2d 97 (2018). An officer's suspicion of criminal activity may reasonably grow over the course of a traffic stop as the circumstances unfold and more suspicious facts are uncovered. *Id.*

Here, the evidence established that during his investigation into the reasons for the initial traffic stop, Officer Hudec learned that Samuels and the passenger provided inconsistent stories regarding their destination and reason for their trip, were unsure of the origin of the rental vehicle in which they were riding, and did not have the registration or rental paperwork for the vehicle. The evidence also established Officer Hudec observed that the artery in Samuels' neck was pulsating and that Samuels appeared nervous. Additionally, during the initial stop, Officer Hudec completed a data check that indicated Samuels had a substantial criminal history, including involvement with narcotics. Based upon a totality of the circumstances, we find that the officer had a reasonable, articulable suspicion that Samuels was engaged in criminal activity sufficient to extend the traffic stop. During that brief period of time following an extension of the stop, Officer Hudec asked Samuels several questions, including a request to search his vehicle, and Samuels consented to such request. Because Officer Hudec had a reasonable, articulable suspicion to extend the traffic stop and Samuels' consent was obtained during that extension, we next consider whether Samuels'

consent to search was voluntarily obtained during the extension of the stop.

[22-27] In *State v. Thompson*, 30 Neb. App. 135, 151-52, 966 N.W.2d 872, 888 (2021), this court recently set forth considerations when determining whether consent to search was voluntarily given:

> The determination of whether the facts and circumstances constitute a voluntary consent to a search, satisfying the Fourth Amendment, is a question of law. *State v. Degarmo*, 305 Neb. 680, 942 N.W.2d 217 (2020). For consent to be voluntarily given, it must be a free and unconstrained choice, not the product of a will overborne, and it cannot be given as the result of duress or coercion, whether express, implied, physical, or psychological. *State v. Bray*[, 297 Neb. 916, 902 N.W.2d 98 (2017)]. In determining whether consent was coerced, account must be taken of subtly coercive police questions, as well as the possibly vulnerable subjective state of the person who consents. *State v. Howell*, 26 Neb. App. 842, 924 N.W.2d 349 (2019). Mere submission to authority is insufficient to establish consent to a search. *Id.* Although the fact that an individual is in police custody is an important consideration in determining the voluntariness of the consent to search, such factor, standing alone, does not invalidate the consent to search as long as the consent was otherwise voluntarily given. *State v. Pope*, 239 Neb. 1009, 480 N.W.2d 169 (1992). See, also, *State v. Degarmo, supra*. The determination of whether consent to search was freely and voluntarily given is based on the totality of the circumstances. *State v. Bray, supra*.

During the extension of the stop based upon Officer Hudec's reasonable articulable suspicion, Samuels denied having anything illegal in the vehicle but ultimately agreed to Officer Hudec's request to search the vehicle. Samuels verbally consented to the search of the vehicle without any indication

that the consent was obtained as a result of coercive tactics. To the contrary, the record indicates that Samuels voluntarily consented to a search of his vehicle without being subject to coercive tactics and that Samuels never revoked that consent. Based on the totality of the circumstances surrounding the consent, the district court's finding that Samuels' consent was voluntary was not clearly erroneous and the district court did not err in overruling Samuels' motion to suppress.

[28] We note that Samuels separately argues that the consent obtained to search the vehicle was unlawful because it was not sufficiently attenuated in relation to the violation of Samuels' Fourth Amendment rights. But we need not decide whether the consent was sufficiently attenuated in this case. Because we found that the consent was voluntarily obtained during a lawful extension of the stop, there was no violation of Samuels' Fourth Amendment rights which requires these additional inquiries. As such, we need not determine whether the consent was sufficiently attenuated from the violation, as such considerations are necessary only when the consent was obtained as a result of additional inquiries made during a seizure after the authority for a seizure has expired. See *State v. Thompson*, 30 Neb. App. 135, 966 N.W.2d 872 (2021). Accordingly, for the reasons stated, this assignment of error fails.

## 2. Samuels' Motion in Limine

Samuels next argues that the district court erred in denying his motion in limine as it related to the text message and video evidence obtained from Samuels' cell phone that was seized during the search of the vehicle. Samuels asserted that the cell phone evidence was irrelevant, was prejudicial, and was improper character evidence under Neb. Evid. R. 404.

[29] A motion in limine is a procedural step to prevent prejudicial evidence from reaching the jury. *State v. Ferrin*, 305 Neb. 762, 942 N.W.2d 404 (2020). It is not the office of a motion in limine to obtain a final ruling upon the ultimate

admissibility of the evidence. *Id.* Therefore, when a court overrules a motion in limine to exclude evidence, the movant must object when the particular evidence is offered at trial in order to predicate error before an appellate court. *Id.*

During the trial, Samuels objected to the State's evidence that related to certain text messages and a video which were the subject of Samuels' original motion in limine. The district court overruled Samuels' objections. On appeal, Samuels does not separately assign error to the district court's rulings on the various objections during trial but only to the district court's ruling on the motion in limine.

[30] In *State v. Ferrin, supra*, the Nebraska Supreme Court addressed a similar argument wherein the defendant alleged error with the trial court's ruling on a motion in limine. The court stated:

> [The appellant's] brief notes that he objected at trial when the video recording of [the witness'] statements was offered, but he has not assigned error to the ruling during trial. To be considered by an appellate court, an alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error.
>
> An appellant who has assigned only that the trial court erred in denying a motion in limine has not triggered appellate review of the evidentiary ruling at trial. Because [the appellant's] second assignment of error challenges only the ruling on the motion in limine, it presents nothing for appellate review.

*State v. Ferrin*, 305 Neb. at 770-71, 942 N.W.2d at 411-12.

Likewise, in this case, Samuels assigns error to the district court's ruling on the motion in limine but fails to assign error to the district court's rulings during trial that related to the various objections made during trial to subjects raised in the motion in limine. As a result, this assignment does not present a challenge for appellate review. Accordingly, this assignment of error fails.

### 3. State's Motion in Limine

Samuels next assigns that the district court erred in sustaining the State's motion in limine preventing Samuels from introducing evidence that the passenger was convicted of possession of a firearm following a trial that dealt with the same subject matter. He contends that the evidence of the passenger's conviction should have been admissible and that a failure to allow presentation of the result from his trial denied Samuels a complete defense and violated his right to due process insofar as he had a right to present a complete defense.

During the hearing on the State's motion in limine, Samuels' counsel argued:

> Judge, I agree we shouldn't talk about penalties and all those kind of things that has nothing to do with the case. That's not relevant. That's not the job of the jury. That's for the Court if he is found guilty. The part about the verdict of guilty is — we are talking about possession of a gun that was found under [the passenger's] floorboard, and his DNA was on it, and the jury has found him guilty, I think it is relevant, and to prevent . . . Samuels . . . from presenting that kind of evidence, I think, violates his due process to present a defense.
>
> And there's an old U.S. Supreme Court case that kind of supports that. I would tell you it's *Webb* [*v.*] *Texas*, 409 U.S. 95, [93 S. Ct. 351, 34 L. Ed. 2d 330 (1972),] and it isn't directly on point, but it talks about preventing . . . the defendant . . . from presenting a defense. It violates a right to due process. Same thing with *Chambers* [*v.*] *Mississippi*, [410 U.S. 284, 93 S. Ct. 1038, 35 L. Ed. 2d 297 (1973)]. They are old cases . . . but they are still good case law. So I think not allowing . . . Samuels . . . to present [the passenger's] guilty verdict on the gun charge would violate his right to due process to present a defense.

Thereafter, the district court sustained the State's motion prohibiting Samuels from eliciting testimony about the

verdict in the passenger's case. The court found that Samuels could elicit the testimony of the firearm's location during the vehicle search and the subsequent DNA profile found on the firearm without needing to introduce into evidence the jury verdict in the passenger's case. During the trial, Samuels made an offer of proof utilizing a certified copy of the information, the amended information, and the jury verdict from the case against the passenger.

More specifically, Samuels now argues that the passenger's conviction for possession of a firearm was independently relevant to show that the passenger was convicted of the same crime and that the firearm could not have been possessed by both Samuels and the passenger at the same time.

[31-33] Whether a codefendant's guilty plea is admissible evidence turns upon whether it was properly offered to help the jury assess the codefendant's credibility or was improperly offered as substantive evidence of the defendant's guilt. *State v. Larsen*, 255 Neb. 532, 586 N.W.2d 641 (1998). Generally, evidence that another person has been convicted of the same crime for which the defendant is on trial is not admissible as proof of the guilt of the defendant. *Id.* The same evidence, however, may be admissible for other reasons. *Id.* For instance, under proper instruction, evidence of a codefendant's guilty plea or conviction may be elicited by the prosecutor on direct examination so that the jury may assess the credibility of the witness that the government asks it to believe. *Id.*

Here, the passenger was convicted of possession of the firearm located on the passenger side of the vehicle during the search. Samuels argues that the evidence of that conviction is independently relevant here because Samuels and the passenger could not have both been in possession of that firearm. That is, Samuels argues that he and the passenger cannot both be convicted of that same crime and that the court's prohibition granting the motion in limine denied him due process in order to conceal from the jury the result of the

passenger's conviction. Generally, evidence of a codefendant's guilt is not admissible as substantive evidence; rather, it is available as a means to challenge the codefendant's credibility. See *State v. Lotter*, 255 Neb. 456, 586 N.W.2d 591 (1998), *modified on denial of rehearing* 255 Neb. 889, 587 N.W.2d 673 (1999). As such, we must determine whether evidence of the passenger's conviction for the same crime produces an exception to that general rule in this context. We hold that it does not.

[34,35] Although we more thoroughly explain the elements of the crime of possession of a weapon by a prohibited person in the section of the opinion governing the sufficiency of the evidence, one such element involves possession of the weapon. See Neb. Rev. Stat. § 28-1206 (Cum. Supp. 2022). The doctrine of constructive possession has been extended to the crime of possession of a firearm by a felon under § 28-1206. *State v. Sherrod*, 27 Neb. App. 435, 932 N.W.2d 880 (2019). Constructive possession means the possessor did not have actual possession but was aware of the presence of the contraband and had dominion or control over it. *Id.*

Pursuant to Neb. Rev. Stat. § 28-1212 (Reissue 2016):

> The presence in a motor vehicle other than a public vehicle of any firearm or instrument referred to in section 28-1203, 28-1206, 28-1207, or 28-1212.03 shall be prima facie evidence that it is in the possession of and is carried by all persons occupying such motor vehicle at the time such firearm or instrument is found, except that this section shall not be applicable if such firearm or instrument is found upon the person of one of the occupants therein.

[36,37] Further, in *State v. Warlick*, 308 Neb. 656, 682, 956 N.W.2d 269, 293 (2021), the Nebraska Supreme Court held:

> Two persons may have constructive possession, or one may have actual possession and the other have constructive possession. Constructive possession may be proved by direct or circumstantial evidence and may be shown

by the accused's proximity to the item at the time of the arrest or by a showing of dominion over it.

It is clear from these authorities, taken together, that more than one person in a nonpublic vehicle may be convicted of the crime of possession of a firearm located in that vehicle. As such, the disposition of the passenger's trial was of no consequence insofar as it related to the State's independent burden to prove the elements of the crime as against Samuels. Because the passenger's conviction in and of itself had no bearing on a charge against Samuels of the same crime, we reject Samuels' claim that the court's refusal to admit the results of that trial interfered with his defense or violated his right to due process.

### 4. DENIAL OF MOTION FOR MISTRIAL

Samuels next assigns that the district court erred in denying his motion for mistrial made after a juror's disclosure that she previously heard certain facts of the case from an individual who had served as a juror in the passenger's trial. Samuels argues that the juror stated, in front of Officer Hudec, that she had been informed of what evidence the jury in the passenger's case believed was significant in finding the passenger guilty. Samuels contends that Officer Hudec's presence in the courtroom during the juror's disclosure allowed Officer Hudec to reformulate his own testimony on that basis. As a result, Samuels contends that his motion for mistrial should have been granted.

[38] A mistrial is properly granted in a criminal case where an event occurs during the course of trial which is of such a nature that its damaging effect cannot be removed by proper admonition or instruction to the jury and thus prevents a fair trial. *State v. Figures*, 308 Neb. 801, 957 N.W.2d 161 (2021).

[39-41] A defendant faces a higher threshold than merely showing a possibility of prejudice when attempting to prove error predicated on the failure to grant a mistrial. *State v.*

*Trail*, 312 Neb. 843, 981 N.W.2d 269 (2022). The defendant must prove that the alleged error actually prejudiced him or her, rather than creating only the possibility of prejudice. *Id.* Absent evidence to the contrary, the legal system presumes that jurors, to the extent they are able, will comply with curative instructions and judicial admonitions. *Id.*

[42-44] A trial court is vested with considerable discretion in passing on motions for mistrial and new trial, and an appellate court will not disturb a trial court's decision whether to grant a motion for mistrial or a motion for new trial unless the court has abused its discretion. *Id.* It is an abuse of discretion to make an error of law or clear errors of factual determination. *Id.* Our deference to the trial court stems in part from the recognition that the trial judge is better situated than a reviewing court to pass on questions of witness credibility and the surrounding circumstances and atmosphere of the trial. *Id.*

Here, at the end of a trial day while Officer Hudec was on the witness stand, the district court recessed until the following day. Outside the presence of the jury, but while Officer Hudec was still present in the courtroom, a juror informed the bailiff that she had information about the case that she needed to disclose. The following colloquy occurred between the court and a member of the jury:

> THE COURT: It's my understanding you indicated to the bailiff there's something else you needed to tell us.
>
> [Juror:] Yes. Apologies. I will just — at the very end of this when we were about to take the video, I had the realization that I may have heard about [the passenger's] case that has happened already. I was told by someone who served as a foreperson a few months ago in a case of a similar — very similar scenario in which two young men were charged with possession of a large amount of marijuana in a trash bag and a firearm and then — sorry — I'm nervous.

THE COURT: That's fine. And this is just like earlier. We just want to know what you know and do whatever we have to do.

[Juror:] So she had said that it was at the point where they saw a video where the gentleman talked about having a gun and they shouldn't be able to find it. That piece is kind of what connected it. So if it was indeed that case related to this one, I don't feel like I can sit in on this and be impartial.

THE COURT: So other than the facts that you just relayed — the individual relayed to you — anything about the case, about the verdict or anything else?

[Juror:] She did say it turned out to be a guilty verdict.

Thereafter, counsel questioned the juror, who disclosed the following:

[Defense counsel:] You kind of heard the facts ahead of time from this other person; is that right?

[Juror:] Yes.

[Defense counsel:] Did they tell you how they viewed it and why this person voted the way she did?

[Juror:] I heard that it — that her opinion had been the not guilty up until the point where she heard in the back of the vehicle, essentially, what she called a confession as far as mentioning hiding the gun, but that may have been more of a tainted view of denying that they had ownership of it and that comment negated it? I don't know for sure.

[Defense counsel:] Okay. Well, she told you that they voted guilty, and you kind of thought you agreed with that and that made sense?

[Juror:] I could understand how hearing that would have changed someone's opinion.

The juror was then excused from service on the jury. When the trial resumed, Samuels' counsel moved for a mistrial alleging that when the juror made her disclosure, Officer Hudec was in the courtroom, heard what a juror claimed the

prior jury found to be significant in finding the passenger guilty, and had the ability to change his testimony based on the juror's disclosure. The district court overruled the motion for mistrial.

Samuels argues that Officer Hudec's receipt of information regarding prior jury deliberations in the passenger's case violated Samuels' right to a fair and impartial trial and resulted in per se prejudice to him. He contends that because Officer Hudec was the State's primary witness and heard the juror's disclosure, Officer Hudec was made aware of what a jury found to be significant and had the ability to place emphasis on it after his testimony resumed.

Based on our review of the record, Samuels was not prejudiced by this alleged error. During the juror's disclosure, she did not indicate her own viewpoint on the evidence. The juror indicated that she was familiar with the case because an acquaintance had told her facts related to the passenger's conviction and what that acquaintance had found to be significant to the determination in the passenger's guilty verdict. The court immediately excused the juror following her disclosure, and the record does not indicate that she had any communication with the other members of the jury. Nor does Samuels argue that any prejudice arose from the incident as it related to the jury that decided the case. Instead, Samuels simply argues that the court should have declared a mistrial based upon the impact of that disclosure on a witness. But under this logic, even a mistrial would not cleanse the witness' perception of what he heard—that is, a juror's account of another juror's impression from a related case. Samuels fails to cite any authority that suggests a witness is prohibited from testifying due to learning the impressions of a jury from evidence adduced in a companion case, and our independent research has uncovered none. Because we find no prejudice from the witness' hearing a secondhand account of a juror's impressions from another trial, we reject Samuels' argument that the district court abused its discretion in failing to grant his

motion for mistrial under these circumstances. This assignment of error fails.

### 5. Sufficiency of Evidence

Samuels next assigns that the district court erred in denying his motion for a directed verdict. He argues that the evidence was insufficient to support his convictions for possession of a firearm by a prohibited person and possession of more than 1 pound of marijuana.

Regardless of whether the evidence is direct, circumstantial, or a combination thereof, and regardless of whether the issue is labeled as a failure to direct a verdict, insufficiency of the evidence, or failure to prove a prima facie case, the standard is the same: In reviewing a criminal conviction, an appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact, and a conviction will be affirmed, in the absence of prejudicial error, if the evidence admitted at trial, viewed and construed most favorably to the State, is sufficient to support the conviction. *State v. Bershon*, 313 Neb. 153, 983 N.W.2d 490 (2023); *State v. Pauly*, 311 Neb. 418, 972 N.W.2d 907 (2022).

### (a) Possession of Deadly Weapon

Samuels argues that the evidence was insufficient to support his conviction for possession of a deadly weapon by a prohibited person. Samuels acknowledges that he stipulated to having been convicted of a felony but argues that the State failed to prove that he possessed the firearm.

A person commits the offense of possession of a deadly weapon by a prohibited person if that person possesses a firearm, a knife, or brass or iron knuckles and has previously been convicted of a felony. § 28-1206. The doctrine of constructive possession is applicable to the offense of possession of a firearm by a felon under § 28-1206. *State v. Sherrod*, 27 Neb. App. 435, 932 N.W.2d 880 (2019). Constructive possession

means the possessor did not have actual possession but was aware of the presence of the contraband and had dominion or control over it. *Id.*

Here, after the firearm was seized from the vehicle, Samuels admitted that the firearm belonged to him; described the firearm to the officer; and, as evidenced by the cruiser footage, was aware of the firearm's presence in the vehicle. However, Samuels claims that the evidence was insufficient to establish his possession of the firearm, because the firearm was found under the floormat on the passenger side of the vehicle; that Officer Hudec believed that Samuels was admitting to the gun charge for the passenger; and that Samuels had been excluded as a major contributor of the DNA profile found on the firearm. We disagree.

Pursuant to § 28-1212:

> The presence in a motor vehicle other than a public vehicle of any firearm or instrument referred to in section 28-1203, 28-1206, 28-1207, or 28-1212.03 shall be prima facie evidence that it is in the possession of and is carried by all persons occupying such motor vehicle at the time such firearm or instrument is found, except that this section shall not be applicable if such firearm or instrument is found upon the person of one of the occupants therein.

Further, as the Nebraska Supreme Court stated in *State v. Warlick*, 308 Neb. 656, 682, 956 N.W.2d 269, 293 (2021):

> Two persons may have constructive possession, or one may have actual possession and the other have constructive possession. Constructive possession may be proved by direct or circumstantial evidence and may be shown by the accused's proximity to the item at the time of the arrest or by a showing of dominion over it.

Taking the facts in the light most favorable to the State, the evidence established that Samuels, a prohibited person, had constructive possession of the firearm based upon evidence including the firearm in the rental vehicle that he was

driving, his proximity to the firearm, his description of the firearm to the officer, his admissions to the officer, and the admissions captured on the cruiser footage. This assignment of error fails.

### (b) Possession of Marijuana

Samuels also argues that the evidence was insufficient to support his conviction for possession of more than 1 pound of marijuana. He argues that the State did not provide sufficient evidence that the marijuana seized from the vehicle weighed more than 1 pound.

Neb. Rev. Stat. § 28-416(12) (Cum. Supp. 2020) provides that "[a]ny person knowingly or intentionally possessing marijuana weighing more than one pound shall be guilty of a Class IV felony." We note that § 28-416 was amended in 2022 after the operative date of the offense in this case.

[45-47] In *State v. Warlick*, 308 Neb. at 682-83, 956 N.W.2d at 293, the Nebraska Supreme Court explained:

[W]e have long held under the language of the criminal narcotics statutes here at issue that possession may be either actual or constructive.

Two persons may have constructive possession, or one may have actual possession and the other have constructive possession. Constructive possession may be proved by direct or circumstantial evidence and may be shown by the accused's proximity to the item at the time of the arrest or by a showing of dominion over it. Thus, possession of a controlled substance means either (1) knowingly having it on one's person or (2) knowing of the substance's presence and having control over the substance.

. . . Evidence that a defendant had constructive possession of a drug with knowledge of its presence and its character as a controlled substance is sufficient to support a finding of possession and to sustain a conviction for unlawful possession.

[48] Further, the fact that one is the driver of a vehicle, particularly over a long period of time, creates an inference of control over items in the vehicle. *State v. Howard*, 282 Neb. 352, 803 N.W.2d 450 (2011).

Here, Samuels does not argue that the evidence was insufficient to establish his knowing or intentional possession of the marijuana, and we find that the evidence, including the footage from the cruiser, established that Samuels was aware of the nature of the marijuana contained inside the rental vehicle. We further reject Samuels' claim that the evidence was insufficient to establish that the weight of the marijuana exceeded 1 pound. The evidence at trial established that the officers seized containers from different marijuana dispensaries, which containers were located inside the rental vehicle that Samuels was driving. Officers also located receipts accompanying the dispensary containers inside the vehicle and on Samuels' person. The dispensary labels and receipts indicated the date of each purchase, a warning that the purchase contained marijuana, the "THC percentage," and the net weight in grams. Officers determined that all the individual dispensary containers together weighed "31 ounces; so just under two pounds." Cruiser footage captured a conversation between Samuels and the passenger discussing their belief that the amount of marijuana in the vehicle weighed under 2 pounds. Based upon the aforementioned evidence, the evidence was sufficient to support Samuels' conviction for the knowing and intentional possession of more than 1 pound of marijuana. This assignment of error fails.

## 6. Excessive Sentences

Samuels' final assignment of error is that the sentences imposed were excessive and that the district court failed to adequately consider his rehabilitative needs, age, health, and general life circumstances.

Samuels was convicted of possession of a firearm by a prohibited person, a Class ID felony, and possession of

more than 1 pound of marijuana, a Class IV felony. See, § 28-1206(1) and (3)(b); § 28-416(12). The district court determined that Samuels was a habitual criminal, resulting in enhancement of the sentences for his convictions of the offenses, each being punishable by a mandatory minimum of 10 years' imprisonment and a maximum of 60 years' imprisonment. See Neb. Rev. Stat. § 29-2221(1) (Reissue 2016). Samuels' sentences of 10 to 15 years' imprisonment and 10 to 11 years' imprisonment are both within the applicable statutory range for enhancements pursuant to a finding that he was a habitual criminal.

[49-52] When sentences imposed within statutory limits are alleged on appeal to be excessive, the appellate court must determine whether the sentencing court abused its discretion in considering well-established factors and any applicable legal principles. *State v. Morton*, 310 Neb. 355, 966 N.W.2d 57 (2021). The relevant factors for a sentencing judge to consider when imposing a sentence are the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the amount of violence involved in the commission of the crime. *Id.* The sentencing court is not limited to any mathematically applied set of factors, but the appropriateness of the sentence is necessarily a subjective judgment that includes the sentencing judge's observations of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *Id.* For a defendant who has been sentenced consecutively for two or more crimes, courts generally consider the aggregate sentence to determine if it is excessive. *Id.*

At the time of the presentence investigation report (PSR), Samuels was 34 years old, was single, and had four dependents. Samuels had obtained his diploma through the GED program but was unemployed. His prior criminal history included two convictions for controlled substance violations,

voluntary absence (escape), operating a motor vehicle without its owner's consent, and willful failure to stop for law enforcement. Samuels had previously been sentenced to probation and parole for his convictions, which sentences were revoked. The PSR indicated Samuels was scored as a high risk to reoffend on the "LS/CMI Assessment," had a low risk for substance misuse, and needed further intervention for mental health support.

Further, contrary to Samuels' claim that the district court failed to consider or improperly considered the sentencing factors, at the sentencing hearing, the district court stated:

I've read and reviewed the [PSR], considered the comments of counsel as well as the relevant statutory factors and considered that you are 34 years old. You have . . . a GED. Your background, as counsel noted, your past criminal record, considering these particular offenses and the nature of these offenses, having considered all of that information, and regarding the nature and circumstances of the crimes as well as your history, character and condition, I do find that imprisonment is necessary for the protection of the public, because there is a substantial risk [that Samuels] would engage in criminal conduct, and a lesser sentence would depreciate the seriousness of the crime and promote disrespect for the law.

[53] Thus, the district court stated that it reviewed the PSR, which included information concerning all of the factors to be considered by a sentencing court. We also note that a sentencing court is not required to articulate on the record that it has considered each sentencing factor or to make specific findings as to the facts that bear on each of those factors. *State v. Thomas*, 311 Neb. 989, 977 N.W.2d 258 (2022).

In sum, the evidence reflects that the district court considered the appropriate sentencing factors and that based on these factors—including that the sentences imposed were within the relevant statutory sentencing range for habitual criminal enhancements, Samuels' criminal history, his previous

failures at probation and parole, and his high risk to reoffend—the sentences imposed were not an abuse of discretion.

## VI. CONCLUSION

Having considered and rejected Samuels' assigned errors, we affirm Samuels' convictions and sentences.

AFFIRMED.